METROPOLITAN LIFE INSURANCE COMPANY v. AGNES WAGNER.

Decided April 15, 1908

**1.—Improper Evidence—Prima Facie Cause for Reversal.**

The admission of improper evidence makes a *prima facie* cause for reversal on appeal. To avoid this effect, the duty devolves upon the party introducing such evidence to show that it was not prejudicial.

**2.—Policy of Insurance—Waiver of Defense.**

The stating by an insurance company of one ground for refusing to pay a policy of life insurance does not necessarily involve a waiver of every other ground of defense.

**3.—Life Insurance—Proofs of Death—Coroner's Verdict—Evidence.**

When a policy of life insurance expressly provides that the proofs of death shall contain the record and verdict of the coroner's inquest, if any be held, and that the proofs of death shall be evidence of the facts therein stated in behalf of the insurance company, the proofs of death must contain such record

and verdict when they, in fact, exist. The coroner's record and verdict are competent evidence under such circumstances.

**4.—Same—Suicide—Expert Testimony.**

The suit being upon a life insurance policy, and the defense being suicide, it was not competent for a surgeon to testify that the wounds on body of the deceased were self-inflicted, even though the surgeon saw the body of the deceased a short time after his death, and examined the location, nature, character and extent of the wounds. But it was competent for such witness to testify as to the character of instrument used in inflicting the wounds.

**5.—Evidence—Non-Expert Opinions—When Admissible.**

The admission of opinions or conclusions of nonexpert witnesses depends upon whether the conditions are such that they cannot be adequately reproduced before the jury by a mere statement of the facts; if they cannot be, then the opinion or conclusion of a nonexpert who witnessed them is admissible; otherwise not. Rule illustrated.

**6.—Suicide—Evidence.**

In a suit upon a life insurance policy, the defense being suicide, evidence considered, and held insufficient to support a verdict against the defendant.

Appeal from the 57th Judicial District, Bexar County. Tried below before Hon. A. W. Seeligson.

*Keller & Keller,* for appellant.—A coroner's inquisition is competent evidence to show that the cause of insured's death was suicide. United States Ins. Co. v. Kielgast (Ills.), 22 N. E., 467, 470; Walther v. Mutual Ins. Co. (Cal.), 4 Pac., 413; Grand Lodge, etc., v. Wieting, 48 N. E., 60; Mutual Life Ins. Co. v. Newton, 22 Wall., 32-38 (22 L. ed., 793); Metzradt v. Modern Brotherhood, 84 N. W., 498; Supreme Lodge v. Fletcher, 29 So., 523, 525; Pyle v. Pyle, 41 N. E., 999; Starkie on Evidence (10th ed.), 406; Bliss on Insurance, sec. 265; 1 Greenl. on Ev., sec. 556.

The preliminary proofs presented to an insurance company in compliance with the condition of its policy of insurance, are admissible as prima facie evidence of the facts stated therein against the insured on behalf of the company. Mutual Ben. L. Ins. Co. v. Newton, 89 U. S., 32 (22 L. ed. 793); Spruill v. N. W. Mut. L. Ins. Co., 27 S. E., 42; Hassencamp v. Mut. Ben. L. Ins. Co., 120 Fed. Rep., 478; Dennis v. Union Mut. L. Ins. Co., 24 Pac., 120; Modern Woodmen v. Van Wald, 49 Pac., 783; Sharland v. Washington Life Ins. Co., 101 Fed., 211; Mutual Ben. Life Ins. Co. v. Higginbotham, 95 U. S., 380, (24 L. ed., 499); Supreme Lodge v. Fletcher, 29 So., 523, 525.

The opinion of a physician is competent evidence as to the cause of death of any particular person. Rogers on Expert Tes., sec. 49, p. 119 (2d. ed.); Shelton v. State, 34 Texas, 666; Schneider v. Manning, 121 Ills., 376.

Medical experts may give an opinion as to the means by which a wound is inflicted. Rogers on Expert Tes., sec. 53, p. 127 (2d. ed.).

Where an insurance policy provides that when a coroner's inquest has been held on the insured, a certified copy of the testimony and verdict must accompany the proofs of death, this is a condition precedent to any recovery by the assured. Hart v. Fraternal Alliance,

84 N. W., 851; Rosenthal v. Scottish etc. Ins. Co., 46 S. E., 1024; 4 Joyce on Ins., sec. 3290, page 3182.

A waiver must be specially pleaded or no proof can be offered or considered. Texas Banking & Ins. Co. v. Stone, 49 Texas, 4, 15; Texas Mut. Life Ins. Co. v. Davidge, 51 Texas, 244, 250; German Ins. Co. v. Daniels, 33 S. W., 549, 551; East Texas Fire Ins. Co. v. Brown, 82 Texas, 631, 636; United Ben. Soc. v. Shepherd, 66 S. W., 577; Love v. Rempe, 44 S. W., 681; Merchants Ins. Co. v. Dwyer, 1 Posey U. C., 449; Continental Ins. Co. v. Vanlue, 26 N. E., 119, 122; Evans v. Queen Ins. Co., 31 N. E., 843, 844; Ft. Wayne Ins. Co. v. Irwin, 54 N. E., 817, 821 and 822; Eiseman v. Hawkeye Ins. Co., 36 N. W., 781; Kahler v. Iowa Ins. Co., 76 N. W., 734, 735; McCoy v. Iowa Ins. Co., 77 N. W., 529, 530; Dwelling House Ins. Co. v. Johnson, 27 Pac., 100, 101; Gillet v. Burlington Ins., 36 Pac., 52; Cloud County Bank v. German Ins. Co., 49 Pac., 688; Anders v. Life Ins. Co., 87 N. W., 331, 333.

The court should have granted a new trial, because of the misconduct of plaintiff's counsel in this, that in his closing speech to the jury, in referring to Brownsville, he said: "That is the part of the country where they use that kind of weapon frequently to commit murder," when no evidence whatever had been given in the case as to the character of people of Brownsville, or what kind of weapons were used there, or that any murders had ever been committed there, and there was no basis for such remarks of said counsel. Rule 39 for District Courts; Oriental v. Barclay, 16 Texas Civ. App., 193; Houston & T. C. R. Co. v. Patterson, 57 S. W., 677; Gulf, C. & S. F. Ry. Co. v. Jones, 73 Texas, 232; Ft. Worth & D. C. Ry. Co. v. Johnson, 5 Texas Civ. App., 15; Chicago, R. I. & T. Ry. Co. v. Langston, 92 Texas, 709; Gulf, C. & S. F. Ry. Co. v. Younger, 10 Texas Civ. App., 141; Lone Star Brewing Co. v. Voith, 84 S. W., 1100; Thompson v. State, 43 Texas, 273 and 274; Phoenix Assurance Co. v. Stenson, 63 S. W., 542; Moss v. Sanger, 75 Texas, 323-324; Baum v. Sanger, 49 S. W., 651; Missouri, K. & T. Ry. Co. v. Huggins, 61 S. W., 976-977; Fordyce v. Withers, 1 Texas Civ. App., 540; Greenville Oil & Cotton Co. v. Davenport, 37 S. W., 625; Galveston, H. & H. R. Co. v. Cooper, 70 Texas, 69-70; Illinois C. R. R. Co. v. Proctor, 89 S. W., 716-717.

The court should have granted a new trial in this cause on account of the misconduct of plaintiff's attorney in this, that he, in his closing speech to the jury, in discussing the question of doubt under the testimony as to whether Frederick Wagner's death was caused by murder or suicide, said to the jurors: "You must take in consideration the condition of plaintiff and defendant when you consider who shall have the benefit of the doubt." Gulf, C. & S. F. Ry. Co. v. Jones, 73 Texas, 234-245; Moss v. Sanger, 75 Texas, 321; Houston, E. & W. T. Ry. Co. v. McCarty, 89 S. W., 807; Dallas Con. & E. St. Ry. Co. v. Black, 89 S. W., 1088-1089; Wichita V. M. & E. Co. v. Hobbs, 5 Texas Civ. App., 34; Willis & Bro. v. McNeill, 57 Texas, 474-476; Chicago, R. I. & T. Co. v. Langston, 92 Texas, 709; Garrity v. Rankin, 55 S. W., 368; Oriental v. Barclay, 16 Texas Civ. App., 193; Surface v. Douglas, 41 Pac., 207; Bitterman v. Hearn, 32 S. W., 341;

Cluett v. Rosenthal, 58 N. W., 1009; Freeman v. Dempsey, 41 Ill. App., 354.

All errors founded on the improper statements or arguments of counsel are presumed to be prejudicial. Chicago, R. I. & T. Ry. Co. v. Langston, 92 Texas, 713; Beville v. Jones, 74 Texas, 154; Blum v. Simpson, 66 Texas, 88; Willis & Bros. v. McNeill, 57 Texas, 476; Gulf, C. & S. F. Ry. Co. v. Jones, 73 Texas, 235-326; Dillingham v. Scales, 78 Texas, 205-206-207; Carvajal v. Casanova, 62 S. W., 428; Hanna v. G., C. & S. F. Ry. Co., 27 Texas Civ. App., 492; Gulf, C. & S. F. Ry. Co. v. Younger, 10 Texas Civ. App., 141.

*W. A. Wurzbach* and *S. C. Eldridge,* for appellee.—The court did not err in excluding from the jury the portions of the answers of the various witnesses, because the said testimony was hearsay and called for opinion of witnesses on matters which are clearly in the province of the jury. Furnell v. Gandy, 46 Texas, 190; Woolsley v. McMahan, 46 Texas, 62.

Even though any insurance policy provides that when a coroner's inquest has been held on the insured a certificate of the testimony and verdict must accompany the proof of death, it is not a condition precedent to any recovery by the assured unless it be shown upon the trial of the suit that the false statement in the proof of loss or death was fraudulently made, and misrepresented a fact material to the question of the liability of the insurance company, upon the contract of insurance sued on, and that the insurance company, was thereby misled and caused to waive and lose some valid defense to the policy. Art. 3096cc, chapter 5, title 58, Sayles' Rev. Stats., Civil Statutes and Supplement. Boehme v. Sovereign Camp Woodmen of the World, 98 Texas, 376.

Even though the policy called for a certified copy of the verdict of the coroner's inquest in the death proof, still failure to give it, under the circumstances, would not change the contract if in other respects the proof was regular; nor did it require a plea of estoppel or waiver, especially where the payment is not refused on account of the absence of said copy and no injury is shown thereby to the defendant from its absence; and furthermore, the burden of proof in all matters in this case was on the defendant. Boehme v. Sovereign Camp Woodmen of the World, 98 Texas, 378; Equitable Life Assurance Co. v. Liddell, 32 Texas Civ. App., 252.

NEILL, Associate Justice.—This suit was brought on October 16, 1905, by Mrs. Wagner against the Metropolitan Life Insurance Company on an insurance policy issued by the company on March 2, 1903, in her favor for $1,500 on the life of her husband, Frederick Wagner, who died on December 1, 1904, while the policy was in full force and effect. In addition to the principal stipulated in the policy, the plaintiff asked judgment for $500, attorney's fees, and twelve percent of the amount of the insurance as statutory damages.

The defendant answered by a general demurrer, a general denial and specially pleaded the failure of plaintiff to make and furnish proof of death in accordance with the terms and conditions expressly

provided by the policy, and that the insured died by his own hand or act within two years from the issuance of the policy, in which it was expressly provided that in such event the company should not be liable for a greater sum than the premiums received.

The case was tried before a jury, who returned a judgment in favor of the plaintiff for $1,500 with interest thereon at the rate of six percent per annum from June 15, 1905, together with twelve percent on the principal and $300 attorney's fees.

There is no controversy about the issuance of the policy as alleged, nor as to the death of the assured at the time averred, the only issues of fact being those raised by defendant's special pleas.

The payment of the insurance is, by. the terms of the policy, subject to certain conditions set forth on the reverse side thereof, among which are the following:

"Second. . . . If the insured within two years from the issue hereof die by his own hand or act, whether sane or insane, the company shall not be liable for a greater sum than the premiums which have been received on this policy."

"Sixth. Proofs of death shall be made by the Home Office in the manner and to the extent required by blanks furnished by the company, and shall contain answers to each question propounded to the claimants, physicians, and other persons indicated in the blanks, and shall further contain the record and verdict of the coroner's inquest, if any be held. The proofs of death shall be evidence of the facts therein stated in behalf of, but not against the company."

The policy upon its face makes the receipt by the company at its Home Office, and its approval of the proofs of death of the insured, made in the manner, to the extent and upon the blanks required by the above condition, conditions precedent to its payment.

The assignments of error will be considered in view of this preliminary statement of the pleadings and evidence, and such additional evidence as pertains to the assignments of error will be stated and considered in disposing of them.

*Opinion.*—1. After the most careful scrutiny, we are unable to detect the slightest relevancy of either letter written by A. Robeson to plaintiff, which were introduced in evidence by her over objections of defendant, to any issue in this case. Though we can not perceive the object of such testimony, plaintiff must have had something which she deemed it to her advantage to effect in placing the letters before the jury. And, as it devolves upon the party who has introduced inadmissible testimony to show that it was not prejudicial or could not probably affect the verdict, which plaintiff has failed to show, the prima facie ground for the reversal of the judgment on account of such error obtains.

2. We are equally at a loss to discover the relevancy of the testimony of plaintiff's counsel (Mr. Wurzbach), to the effect that he went into the company's office at San Antonio and was informed by Mr. Robeson, its agent and superintendent, that word had been received from the main office at New York that the company refused to pay the policy or any part of it, except to return the premiums,

because the insured had committed suicide, and that thereupon he, Wurzbach, filed suit upon the policy, or the purpose of its introduction, unless it were to show that the company had waived the omission from the proofs of death, furnished by plaintiff, of the record and verdict of the coroner's inquest and predicated its refusal to pay solely upon the ground that Frederick Wagner had died of his own hand or act, without making any point upon the failure of plaintiff to attach the record and verdict of the coroner to the proofs of death furnished the company. We do not understand that stating one ground for refusing to pay a policy necessarily involves a waiver of every other ground of defense against its payment. But however this may be, such facts as constitute a waiver of any defense against a demand on a policy of insurance must be specifically pleaded; and as no such waiver was pleaded by plaintiff, evidence tending to prove it was inadmissible.

3. Ordinarily the verdict of a coroner's jury is inadmissible in this State to prove the cause of death (Boehme v. Sovercign Camp W. of W., 98 Texas, 376); but when, as in this case, it is expressly provided by the policy that proofs of death "shall contain the record and verdict of the coroner's inquest, if any be held," and "the proofs of death shall be evidence of the facts therein stated in behalf of . . . Company," a different question is presented. The undisputed evidence shows that a coroner's inquest was held over the insured's dead body; that a record of the proceedings was made, and that it was expressly found by the coroner: "That some time during the 1st day of December, 1904, the said Frederick Wagner, with suicidal intent, in said county and State, did cut himself on the bend of the right elbow, inflicting a wound two and one-half inches in length, which probably caused a severance of the ulnar artery, and (11) distinct punctures within an area of two inches in the region of the left nipple, all apparently made by a penknife, from the effects of which said wounds the said deceased died at the time and place hereinbefore stated," which was certified to, as well as proved by the depositions of the coroner himself; and that neither the record nor verdict was attached to the proofs of death furnished by the plaintiff to the defendant. In view of these facts the record and verdict of the inquest, when offered in evidence by the defendant, should not have been excluded upon the objection of plaintiff that the proceedings were *ex parte*. There can be no doubt that the record of such proceedings, which were duly proved and attested, was evidence of the fact that the inquest was held and a record of the proceedings was preserved. This, in connection with the proofs of death furnished by plaintiff, would have conclusively shown that such proofs were not made in compliance with the provisions of the policy, and there can be no question as to its admissibility as evidence to establish such fact. But in view of the stipulation in the policy referred to, if it were shown that plaintiff knew of such proceedings and could have obtained the record and wilfully refused to attach it to the proofs of death, we would not be prepared to hold that the record of such proceedings was not evidence of the fact that deceased came to his death by his own hand. If the record had been attached to

the proofs of death, as was required by the express terms of the policy, it would under the agreement between the insurer and assured have been evidence for the former of such fact. And we are not inclined to hold that the beneficiary in the policy, by wilfully omitting from the proofs the record of the proceedings, in violation of its express terms, can deprive the defendant of evidence that was expressly agreed upon by the parties to the contract. See Walther v. Mutual Ins. Co., 4 Pac. (Cal.), 413; Taylor v. Aetna Life Ins. Co., 79 Mass., 434; 70 N. E., 1066; 2 Wigmore on Ev., sec. 1073, note 5.

4. The fourth, fifth, sixth and seventh assignments are directed against the action of the court in excluding certain portions of the answers in the deposition of the witness, Dr. B. J. Edgar, to interrogatories offered in evidence by the defendant. As these assignments embrace similar questions and are determinable by the same principles of law, they will be considered together. Preliminary to their consideration, it is deemed advisable to state from the record certain undisputed facts regarding the deceased and in relation to his death in order that the nature of the questions presented for decision may clearly appear and our opinion upon them be fully apprehended: The insured was Commissary Sergeant in the Subsistence Department of the U. S. Army stationed at Fort Brown in Cameron County, Texas, at the time of his death, which was December 1, 1904; on that day his body, clothed in a white shirt, was found lying on the ground in the National Cemetery at Brownsville behind a clump of bushes near a bridge on a road leading to the Rio Grande; he was lying on his back with eleven punctures in a radius of two inches in the region of the left nipple, seven or eight wounds on his left forearm, and also a wound two and one-half inches long about half an inch above the flexure of the right elbow joint which severed the ulnar artery. His shirt was open or torn from his breast leaving the left breast bare, and a piece of cloth had been torn from his shirt, his arms were extended parallel with his body, the sleeve on the right arm having been rolled up, and a bloody pocket knife was lying open beside his left hand which was also bloody; his body was still warm when discovered. The witness, B. J. Edgar, who was the Post surgeon of the U. S. Army at Fort Brown, saw the body of the deceased where it was discovered, examined the nature and extent of the wounds, after testifying substantially to facts as above stated, was asked the following questions, which were answered by him as shown below: Q. "If Frederick Wagner is dead, state what caused his death, if you know?" Answer. "Exsanguination from knife wound at bend of right elbow joint, without doubt self-inflicted by pen knife found by his side." The last clause of the answer was excluded upon objection of plaintiff's counsel upon the ground that it was a statement of a conclusion or opinion of the witness.

Q. "State whether or not there were any wounds on his (Wagner's) person, and if so, describe them as fully as you can." A. "There were eleven distinct punctures in a radius of two inches of the left nipple evidently made with the point of a penknife, and also a wound two and one-half inches long about half an inch above the

flexure of the right elbow joint, evidently made with a dull penknife, as the edges of the wound were ragged." The words between the "nipple" and "and," commencing with the word "evidently" and ending with the word "penknife," and also the words at the latter part of the sentence commencing with the word "evidently" and continuing to the end of the sentence, were excluded by the court on the same objection of plaintiff's counsel that was made to those in the answer to the other question.

Q. "From the length, depth and nature of the wounds, state whether or not they were inflicted with said knife?" (referring to the knife lying near deceased's left hand). A. "They were." The answer was excluded upon the same objections as the others.

Q. "From all the facts given by you, were the wounds found on said Wagner's person sufficient to cause his death; and in your opinion, based on the facts given by you, were said wounds self-inflicted?" A. "Yes, the wounds were sufficient to cause death, and they were self-inflicted." Upon the same objection the words, "and they were self-inflicted" were excluded by the court.

These assignments of error involve the questions: 1. Whether it is permissible for a physician or surgeon who saw the body of the deceased a short time after his death and examined the location, nature, character and extent of his wounds to give his opinion as an expert that they were self-inflicted? 2. Whether, in view of such facts, the opinion of the physician or surgeon as to the kind of instrument used in inflicting the wounds is admissible in evidence? It will be observed that the first question involves the principal one on which this case hinges. For it is indisputable that the wounds described by the witness were the cause of Wagner's death, and, this being so, the only question left for the jury to decide was, were the wounds inflicted by him?

In ordinary cases, the issue being strictly on the existence of facts capable of being proved or disproved by direct evidence, opinion evidence must be excluded. The various exceptions to this rule are grounded on necessity, which exists when the facts in issue are not themselves accessible by evidence, being either future probabilities or mere contingencies, or else actual facts, but not within positive knowledge. As the knowledge, by which the existence of an unknown fact is inferred from other facts proved, may not fall within the range of ordinary information, such fact may be proved by professional or experienced witnesses having peculiar knowledge or skill in the science, art or trade relating to the subject. To illustrate: The fact of certain appearances in a dead body having been proved, the question whether such appearances indicate poison is not within the knowledge of men of ordinary information, and resort may be had to the opinion of a toxicologist based upon the facts proved as to the appearance of the dead body. But it is seldom, if ever, that a witness, whether an expert or not, can be permitted to express an opinion on the ultimate question a jury is called upon to decide. Lawson, Expert Ev. (2 ed.), 172; Graney v. St. Louis, I. M. & S. R. Co., 157 Mo., 666, 57 S. W., 276, 50 L. R. A. 156; Chicago, etc., R. Co. v. Modesitt, 124 Ind., 212, 24 N. E., 986; Johnson v. Anderson,

143 Ind., 493, 42 N. E., 815; Buxton v. Somerset Potters Works, 121 Mass., 448; Fisher v. Oregon S. L. & U. N. R. Co., 22 Or., 533, 30 Pac., 425; Hopkins v. Indiana & St. L. R. Co., 78 Ill., 32; Jeffrey v. Keokuk & D. M. Ry., 5 Am. & Eng. Ry. Cases, 576; Baltimore & O. R. Co. v. Schultz, 22 Am. & Eng. Ry. Cases, 583. The obvious reason for this is that the ultimate issue in a case must be decided by a jury, and not by opinions of witnesses, though they be experts. Though the opinions of such witnesses in cases where they are admissible may be so near the issue as to control its decision, yet it must be decided by the jury. While an expert may, from facts and circumstances introduced in evidence, give his opinion that a person's death was directly caused by poison or from wounds seen upon his body, he can not from such facts go further and give his opinion as to whether the poison was self-administered or the wounds self-inflicted, where the question of suicide *vel non* is the very issue to be determined and upon which the rights of the parties depend. It would be an anomaly to permit a witness who was not present when a homicide was committed to give his opinion as an expert that it was or was not committed by the defendant upon trial for murdering the deceased. Though to allow such an opinion on such a trial would be no more violative of the principles of evidence and of law than it would, in a case like this where suicide is the only issue, to permit a witness—though an army surgeon—to give his opinion from facts known by him or introduced in evidence that the wounds which caused the death of the insured were self-inflicted. We, therefore, conclude that the court did not err in excluding that part of Dr. Edgar's answers in which he testified that the wounds on the body of the deceased were self-inflicted.

The other question should receive an affirmative answer. From the examination of the wounds and of the knife found near the body, it was admissible for the witness to give his professional opinion not only as to the kind of instrument used in their infliction, but that they were or could have been made with the knife. That the jury could, from all the facts and circumstances testified to, have drawn the conclusion as to the kind of instrument used, does not militate against the admissibility of expert testimony upon the question. Though it would seem from the undisputed facts that no man of ordinary intelligence could have deduced any other conclusion from them than that the penknife found near the deceased's left hand was the instrument with which the wounds were made, it is apparent from the verdict (if it is entitled to be considered as the expression of a conclusion deduced from the testimony) that the jury did not reach such a conclusion. Such a verdict, if it is entitled to any respect at all, demonstrates that upon such a question a jury requires the aid of expert testimony in order to arrive at a proper conclusion. For if the wounds upon the body of the deceased were inflicted with the penknife, as in the opinion of the witness they were, the conclusion from all the facts and circumstances in the case that they were self-inflicted is irresistible.

5. The next group of assignments of error, from the ninth to

twelfth inclusive, relate to the exclusion of certain parts of the depositions of Capt. Kilburn; and, aside from the fact that the witness is not an expert, involve substantially the same questions that were considered under the group of assignments just disposed of. Clearly, his expression of opinion or belief that the wounds were self-inflicted was inadmissible and was rightly excluded.

The other questions presented by the assignments are not so easily solved. They are evolved from the following answer:

"I found his body in a thicket, he was lying on his back, clothed in a white shirt, which was open or torn from over his breast, leaving his left breast bare. There were seven or eight wounds in his left forearm, as if made by a small penknife, and an effort had been made to tie these up with a piece of cloth, torn from his shirt; over the left breast there were several wounds evidently made by the same instrument;" and the rulings of the court in excluding the second clause of the last sentence, commencing with the word "as" after "forearm" and ending with the word "shirt," and the words "evidently made by the same instrument." Was the excluded testimony, coming from a non-expert, competent? This testimony is as to what appeared to the witness from the wounds he saw on the dead body, and the piece of cloth torn from the deceased's shirt. The admission of opinions or conclusions of non-expert witnesses relating to death and dead bodies, depends upon whether the conditions are such that they can not be adequately reproduced before the jury by a mere statement of the facts. If they are such as can not be adequately reproduced, the opinion or conclusion of a non-expert who witnessed them is admissible; but if they are such as can be adequately reproduced and mirrored by the facts as they appeared to the witness, non-experts will not be allowed to invade the province of the jury with their opinions or conclusions. 5 Ency. Ev., 688, 689; 3 Wigmore on Ev., sec. 1974 and cases cited in note 1; Lawson on Expert and Opinion Ev., (2d ed.), p. 505, rule 63; Fuller v. State, 23 So. Rep., 688. In fact, the principle stated underlies the admission of the testimony of a non-expert witness, as to what appeared or seemed to him, in every case, where, from the nature of the facts, it is impossible to adequately reproduce to the jury what was observed by the witness. As is illustrated by the following Texas cases. McCabe v. San Antonio Traction Co., 88 S. W., 387; San Antonio Traction Co. v. Flory, 100 S. W., 202; International & G. N. Ry. v. Drought, 100 S. W., 1012; Gulf, C. & S. F. Ry. v. Reagan, 34 S. W., 796; Fordyce v. Moore, 22 S. W., 235; Gulf, C. & S. F. R. Co. v. Ross, 32 S. W., 730; St. Louis & S. W. R. Co. v. Brown, 30 Texas Civ. App., 57; El Paso Elec. Co. v. Baer, 108 S. W., 199.

Upon the principle stated, as illustrated by the authorities, it seems to us that the testimony of the witness which was excluded was clearly admissible. The wounds on the body could not be seen by the jury, nor their appearance as adequately shown by testimony describing them as it was seen by the witness. He could tell from their appearance whether they seemed to have been made with a penknife or not much better than the jury could from the evidence in regard to them; and with his testimony as to how they seemed to

him, the jury would have been more apt to reach a proper conclusion as to the kind of instrument they were made with than without it. In view of the issue in the case and all the facts and circumstances in relation to the cause of the insured's death, it was a matter of vital importance to ascertain whether the wounds were made with a penknife, and in order to properly determine the question all legitimate testimony upon it should have been placed before the jury. Whether an effort had been made to tie up the wounds with the piece of cloth torn from deceased's shirt, was also an important question, in its bearing upon the principal issue, for the jury to determine. Appearances to one who witnessed them would enable him to form a more correct conclusion as to whether such an effort was made than the jury could from any direct testimony as to what such appearances were. For this reason we think, under the rule stated, that the testimony of the witness as to the seeming effort to tie up the wounds was admissible.

6. That portion of the witness Kilburn's answer to the tenth cross-interrogatory which was excluded was clearly hearsay and the court did not err in excluding it on that ground.

7. The testimony of the witness Richardson, that the wounds he saw on deceased's body "appeared to have been made with a knife," should have been admitted; but the statement, that in his opinion the wounds were self-inflicted, was properly excluded. Our reason and the authorities upon which it is founded were given in disposing of similar questions raised by prior assignments of error. For the same reason the sixteenth assignment of error, which complains of the court's excluding the testimony of the witness Gavito that "the surrounding circumstances indicate that the wounds were self-inflicted," is overruled.

8. The eighteenth and nineteenth assignments of error complain of the court's refusal of certain special instructions requested by the defendant to return a verdict in its favor upon the ground that the undisputed evidence established the fact that plaintiff never furnished the record and verdict of the coroner's inquest, as required by the policy of insurance. It will be observed from our statement of the pleadings, as well as from the undisputed evidence, that defendant in its answer specially pleaded the failure of plaintiff to attach to her proofs of death the record and verdict of the coroner's inquest held over the body of the deceased, and that plaintiff knew, when the proofs of death were made, that such inquest was held and of the record thereof made by the coroner, and that she knowingly failed to attach such record and verdict to the proofs of death furnished by her to the defendant company. No waiver by the defendant, of the requirement in the policy to attach such record to the proofs of death, was pleaded by the plaintiff, and the undisputed evidence shows that the inquest was held and record thereof preserved, and that the plaintiff failed to attach it, as required by the policy, to such proofs of death. The policy makes it a condition precedent to the right of plaintiff to recover to furnish proofs of death in accordance with the provisions thereof, and the plaintiff having failed to furnish such proofs in accordance with the provision of the policy,

no waiver thereof having been pleaded nor excuse shown for failure to comply with such requirement, we think that the peremptory instruction, requested by defendant, to return a verdict in its favor on account of the failure of plaintiff to comply with such condition precedent, should have been given. 4 Joyce on Insurance, secs. 3286, 3290; East Texas Fire Ins. Co. v. Brown, 82 Texas, 631; East Texas Ins. Co. v. Dyches, 56 Texas, 570; Phoenix Ins. Co. v. Willis, 70 Texas, 15; United Benev. Soc. v. Shepherd, 66 S. W., 577; Love v. Rempe, 44 S. W., 681; Continental Ins. Co. v. Vanlue, 26 N. E., 119.

9. The remarks of counsel for plaintiff in his closing argument to the jury, which are complained of in the twentieth and twenty-first assignments of error, were eminently improper and such as have been frequently held ground for reversal. But, inasmuch as the court instructed the jury not to consider them, we would not be inclined to reverse the judgment on account of their impropriety, if we believed the evidence in the record was sufficient to support it.

10. The remaining assignments complain of the insufficiency of the evidence to sustain the verdict. We believe that these assignments are well taken. Upon the question of the sufficiency of the evidence to sustain the verdict we are not allowed to consider the evidence which was improperly excluded. It might perhaps have appeared more clearly that the assured committed suicide than it does without it; but with the evidence that was admitted it so clearly appears that the wounds which caused his death were self-inflicted, that we can not perceive how any honest, fair-minded jury could reach any other conclusion. This is said with due regard to the presumption that obtains in the first instance against suicide and that the burden is upon the defendant to overcome such presumption, for the evidence in this case is so cogent that it absolutely precludes every reasonable hypothesis of any other cause of the assured's death than from wounds inflicted by his own hand. See 1 Witthaus & Becker's Med. Jurisprudence, 525 et seq.; Parish v. Mutual Benefit L. Ins. Co., 49 S. W., 153.

While there was evidence offered by the defendant upon this issue, which was erroneously excluded, the case seems to have been fully developed and there is nothing to indicate that plaintiff could produce, upon another trial, any evidence that would tend to cast any reasonable doubt upon the fact, shown by the overwhelming evidence, that her husband came to his death by wounds inflicted by himself. Therefore we can perceive no reason for remanding this cause for another trial, but are satisfied that the judgment should be reversed and judgment here rendered in favor of the appellant, which is accordingly done.

### ON REHEARING.

On considering this motion, we have concluded that instead of reversing the judgment in favor of the appellee and rendering judgment in favor of the appellant, we should have reversed the judgment of the court below and remanded the cause for another trial. There-

fore, the motion is granted, the judgment here rendered in favor of appellant set aside, the judgment of the District Court reversed and the cause remanded.

*Reversed and remanded.*