FT. WORTH & D. C. RY. CO. v. DECATUR COTTON SEED OIL CO. (No. 8515.)

(Court of Civil Appeals of Texas. Ft. Worth. Jan. 27, 1917.)

1. EVIDENCE ⬡⟲474(1)—ADMISSIBILITY — EXPERT TESTIMONY.

In an action against a railroad company for the killing of cattle, a witness familiar with the locality may, though not an expert as to the operation of trains, testify that the place where the cattle were killed had not for several years been used for the switching of cars.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2196, 2205, 2207.]

2. EVIDENCE ⬡⟲474(5)—OPINION EVIDENCE—QUALIFICATIONS.

In such case a witness who testified that he had handled cattle for years, and that other cattle being fed with those killed weighed 1,180 pounds, is prima facie qualified to give his opinion as to the weight of the cattle killed.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2199.]

3. EVIDENCE ⬡⟲471(20)—QUALIFICATIONS OF WITNESS.

A witness who stated that he was familiar with the market value of cattle at the place where they were killed is competent to testify as to the value, unless further interrogation developed facts showing that he did not know the value of the cattle.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2162.]

4. RAILROADS ⬡⟲446(7) — INJURIES TO ANIMALS ON TRACKS—SWITCHING YARDS.

Vernon's Sayles' Ann. Civ. St. 1914, art. 6603, declaring that each and every railroad company shall be liable to the owner for the value of all stock killed or injured by its cars and locomotives in running over their respective railways, but, if the company fence its road, it shall only be liable for injuries resulting from a want of ordinary care, does not require a railroad company, to escape liability, to fence its tracks passing over public roads and streets or where it would be dangerous because constituting depot grounds and switching yards, and a railroad company cannot escape liability

for the killing of stock by showing that the accident occurred within the switching bounds arbitrarily established by the company, and, where there was evidence to show that switching operations were not and could not be conducted at the point where the accident occurred, the submission of the special issue whether the building of a fence would have inconvenienced railroad employés was not error.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1634.]

5. APPEAL AND ERROR ☞1062(1)—REVIEW—HARMLESS ERROR.

Where the finding on a special issue was unnecessary to support the judgment, the submission of the issue, though erroneous, is harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4212.]

6. RAILROADS ☞441(6)—KILLING OF STOCK—BURDEN OF PROOF.

In an action against a railroad company for the killing of stock, the burden is on the company, the place of the accident not being fenced, to show that it was not permitted by law to fence such place, or that to do so would endanger train operatives or inconvenience the public.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1583–1587.]

7. TRIAL ☞121(3)—ARGUMENT OF COUNSEL—RIGHT OF WAY—FENCING.

A railroad company seeking to escape liability for the killing of cattle, though it had not fenced its right of way as required by Vernon's Sayles' Ann. Civ. St. 1914, art. 6603, on the ground that the place of the accident was part of its switching yards, can claim the exemption which rests upon grounds of necessity only where the necessity exists, and argument of counsel that the terminal of the switches would constitute the terminal of the switching yard is not open to objection.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 297.]

8. TRIAL ☞121(2)—ARGUMENT OF COUNSEL—PROPRIETY.

In an action for the killing of cattle, argument of counsel that, inasmuch as a witness could see a train a given distance those in charge of the train might have seen the cattle, though possibly illogical, is not objectionable.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 296.]

9. APPEAL AND ERROR ☞930(1)—REVIEW — VERDICT.

In passing upon whether there is sufficient evidence to sustain a verdict, the appellate court must reject all evidence favorable to the defendant, and consider only that favorable to the verdict, in which case, if the jury might have reached the verdict they did, it cannot be set aside.

[Ed. Note.—For other cases. see Appeal and Error, Cent. Dig. §§ 3755, 3756, 3758.]

10. EVIDENCE ☞588—WEIGHT AND SUFFICIENCY.

A jury is not required to believe a witness, though he makes a plain statement of what is not impossible, and is neither impeached nor contradicted, but may discredit him on account of the manner of testifying and attendant circumstances.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2437; Witnesses, Cent. Dig. § 1164.]

Appeal from Wise County Court; J. W. Walker, Judge.

Action by the Decatur Cotton Seed Oil Company against the Ft. Worth & Denver City Railway Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Thompson & Barwise and George Thompson, Jr., all of Ft. Worth, and McMurray & Gettys, of Decatur, for appellant. Ratliff & Spencer, of Decatur, for appellee.

BUCK, J. This is the second appeal of this case. On the first appeal the judgment of the trial court was reversed and the cause remanded, as shown in 179 S. W. 1104. The statement of the pleadings there given we adopt for this appeal, except that on the second trial the defendant admitted in writing that plaintiff's cattle were not struck at a public crossing, or at any crossing, on defendant's right of way. The cause was submitted to a jury on special issues, and in answer thereto the jury found as follows:

(1) That the reasonable market value of the cattle killed was $319.

(2) That the cattle in question were not running or remaining at large with the knowledge or consent of the plaintiff, or its employés.

(3) That the cattle were not killed within the switching limits of defendant's railroad yards at Decatur.

(4) That the employés of plaintiff who were out looking for the cattle in question after they had escaped from the pens on the night in question were not negligent in failing to drive the cattle which were afterwards killed from defendant's yard and track when such employés found them there, and in going after other cattle as they did.

(5) That the plaintiff was not negligent in the way and manner of constructing and maintaining the fence surrounding the pens where said cattle were kept and from which they escaped.

(6) That the defendant railway company did not use in 1913 the right of way and track at the place where the said cattle were struck in coupling and uncoupling cars for switching purposes.

(7) That the defendant did not use said place or places for the purpose of switching its cars or trains thereover during the year 1913.

(8) That a fence constructed along defendant's right of way and attached to the south end of the trestle (shown in the evidence) would not have endangered or inconvenienced the defendant's employés in switching and coupling cars south of the trestle.

(9) That defendant's agents were negligent in striking said cattle after they discovered them on the right of way.

The court further defined ordinary care and proximate cause, and instructed the jury that the burden of proof was on the defendant to show by a preponderance of the evidence the defenses set up by it, but that the

burden of proof was upon the plaintiff to show by a preponderance of the testimony that the defendant, or its agents, was negligent in striking said cattle after discovering them.

Upon the verdict of the jury the court rendered judgment for the plaintiff in the sum of $319, and defendant appeals.

[1] D. J. Moss was the manager and W. E. Mitchell was the superintendent of the plaintiff company, and each of them was permitted to testify, over the objection of the defendant, that during the several years of his connection with the plaintiff company he had not seen the employés of the defendant railway company use the space south of the culvert or trestle for switching purposes.

Under appellant's first assignment the action of the court in overruling its objection to this testimony is assailed. The objection is founded on the contention that the testimony elicited was with reference to an expert matter concerning railroading, or the operation and handling of trains and cars, and especially the making up of trains and the placing of cars, and that these witnesses failed to qualify as experts, and did not show themselves to have had any experience in such matters, or any special knowledge with reference thereto, and consequently were not competent to testify upon this point. Appellant cites El Paso Elec. Ry. Co. v. Davidson, 162 S. W. 937, and Metropolitan Life Ins. Co. v. Wagner, 50 Tex. Civ. App. 233, 109 S. W. 1120, in support of this assignment. But we do not think that the assignment presents error, or that the authorities cited are pertinent to the question here presented.

In the first case cited the El Paso Court of Civil Appeals held that in a case involving a collision between a street car and an automobile the evidence of the motorman whose car struck deceased's automobile to the effect that after he saw deceased was about to turn his automobile across the track the street car could not have been stopped by the use of any means within the motorman's power in time to have avoided the accident was not admissible; that being a question for the jury's determination, and it being as well qualified to form an opinion thereon as the expert witness.

In the second case cited, Life Ins. Co. v. Wagner, supra, one of the main issues to be decided was whether the deceased had committed suicide or not. There was no question as to the fact that deceased had died as a result of the wounds inflicted upon him, but only as to whether such wounds were self-inflicted or not. Under this state of facts, the Court of Civil Appeals for the Fourth District held that a physician who saw the body of the deceased a short time after his death, and who examined the location, nature, character, and extent of his wounds, could not give his opinion as an expert that such wounds were self-inflicted.

But the question presented in the instant case is not that presented in either one of the cases cited. We do not think the testimony complained of constituted an invasion of the province of the jury, or that such testimony was inadmissible because the witnesses did not qualify as experts in railroading. Both witnesses testified to years of service at the oil mill in the near vicinity of that part of defendant's right of way and track where the cattle were killed, and we think it was permissible for plaintiff to show by such witnesses that during the years of such opportunity said witnesses had not seen the railway company do any switching on that portion of the track south of the trestle or culvert. This was a question of fact, to testify concerning which it was not necessary that the witness be shown to be an expert. In many cases witnesses may testify to the existence and nonexistence of the very fact to be found by the jury. Scalf v. Collins County, 80 Tex. 514, 16 S. W. 314; Southern Cotton Oil Co. v. Wallace, 23 Tex. Civ. App. 12, 54 S. W. 638; F. W. & D. C. Ry. Co. v. Ayers, 149 S. W. 1068. 5 Encyclopedia of Evidence, p. 654, § 4, reads as follows:

"However, the exception to the general rule that witnesses cannot give opinions is not confined to the evidence of experts testifying on subjects requiring special knowledge, skill, or learning, but it includes the evidence of common observers testifying to the results of their observation made at the time in regard to common appearances, facts, and conditions which cannot be reproduced and made palpable to a jury."

[2] This assignment is overruled, and also the second, which complains that the court erred in admitting the evidence of the witness Moss concerning the weight of the four head of cattle killed. Said Moss testified that he had handled cattle for about ten years, and had had occasion to view and look at cattle a great deal during that time and estimate their weights, that he sold the other cattle, some 220 head, which were being fed in the pen at the time these four steers were killed, and that said steers sold weighed 1,180 pounds per head. The four steers killed were the largest steers that he had, and in his opinion they would weigh about 1,200 pounds each. No request was made by defendant for permission to further test the qualification of the witness. We think that the witness made a prima facie showing as to his qualification, and that any objection to his testimony goes rather to the weight than to its admissibility.

[3] The third assignment complains of the testimony of the witness Moss concerning the market value of such cattle at Decatur at the time they were killed. He was asked if there was a market at Decatur for such cattle at the time they were killed, and, if so, what was such market value. He answered

that there was a market value at Decatur, that he knew it, and that it was $7.25 per hundred. It is urged by appellant that it was a matter for the court to determine whether there had been sufficient sales of such cattle in sufficient · quantities at the place in question and often enough to show a market value, and that the defendant had the right to have the matter shown and determined in a legal manner before the witness was permitted to express his opinion as to such value; that, before a witness could state an opinion as to the value of property, the facts showing his qualification to do so must be shown. Having plainly stated that he knew the market value, he was competent to testify as to such value (Davis v. Fain, 152 S. W. 218), unless upon request of the defendant the court had permitted its counsel to further question the witness, and such interrogation developed facts going to show that the witness did not know such value (Railway Co. v. Vogel, 179 S. W. 268, writ denied, 188 S. W. xvi). In G., C. & S. F. Ry. Co. v. Jackson, 99 Tex. 343, 89 S. W. 968, 970, cited by appellant in support of this assignment, it was merely held by the Supreme Court that, where a plaintiff, claiming damages for injuries to his cattle in transportation, testified as to the difference between the value of the cattle uninjured and their value as injured at the point of destination, but showed no knowledge of their market value there except as derived from the estimate of commission men who loaned money on them, it was error to exclude cross-examination of the witness in order to test his qualification. But no such question is presented here. The assignment is overruled.

[4] The fourth assignment complains of the submission of special issue No. 9, to wit:

"Would a fence constructed and built along defendant's right of way and attached to the south end of the trestle have endangered or inconvenienced defendant's employés in switching and uncoupling cars south of the trestle?"

Objection to the submission of this question was made in the trial court, and is here urged, on the following ground, among others:

"Because no legal duty rested upon the defendant to fence its switchyards and grounds, however much or little it might inconvenience its employés. * * * The plaintiff is not entitled to predicate liability against the defendant upon any finding that employés of the railway company would not have been endangered or inconvenienced by such fencing, it being the lawful privilege of the defendant to have its switchyards and grounds as free from obstruction as it might see fit in order to facilitate the prompt handling of its cars and trains thereover and provide for the safety and convenience of its employés in doing such work."

Plaintiff introduced evidence tending to show that no switching was done during the year 1913 as far south as the place where the cattle were killed; that the distance from the south end of the southernmost switch to the north end of the trestle was 152 feet, and that the trestle was 34 feet across; that the cattle were killed south of the trestle; that the track for some distance north and south of the trestle was on a dump some 10 to 20 feet; and that a trainman, because of this dump, could not, from the ground, couple and uncouple cars and perform other services connected with switching. Plaintiff further attempted to show by testimony that fences running from the south end of this trestle and connecting with the right of way fence on either side would have prevented cattle from getting on the right of way at the place where these cattle were killed, and that such fence or fences would not interfere with the switching of trains and the coupling and uncoupling of cars, inasmuch as such duties were necessarily performed by the trainmen on the cars, rather than on the ground, because of the existence of such dump. As amended in 1905, article 6603, Vernon's Sayles' Texas Civil Statutes, reads:

"Each and every railroad company shall be liable to the owner for the value of all stock killed or injured by the locomotives and · cars of such railroad company in running over their respective railways, which may be recovered by suit before any court having competent jurisdiction of the amount. Such liability shall also exist in counties and subdivisions of counties which adopt the stock law prohibiting the running at large of horses, mules, jacks, jennets, and cattle: Provided, however, that in all cases, if the railroad company fence its road, it shall only be liable for injury resulting from a want of ordinary care."

As said in our opinion on the former appeal of this case (179 S. W. 1104–1106):

"While the statute quoted does not, in specific terms, require the railroad company to fence its track, it is usually referred to in the decisions as having that effect, since, in the absence of a compliance with that statute, the railway company is held liable as an insurer against loss for the killing of cattle upon its track by its trains. According to the well-established rule of our decisions, that statute has no application within the switch limits of a railway company at and around its stations, where the fencing of the track would endanger the safety of its employés in coupling and uncoupling cars, and would impede their movements in performing that service"—citing cases.

The statute requires railway companies to fence their tracks in order to avoid liability for killing stock, but the courts have, from the necessities of the case, read into the statute certain exceptions; for instance, where it would be unlawful for a railway company to fence its tracks, as in the case of public roads and streets; also, where it would be dangerous to its employés to construct cattle guards and dig pits, such as are necessary in fencing a railroad track, at places, such as depot grounds and switching yards, where employés are required to go upon the track day and night for the purpose of switching and making up trains. Railway Co. v. Blankenbeckler, 13 Tex. Civ. App. 249, 35 S. W. 331; Railway Co. v. Cole, 35 S. W. 526; I. & G. N. Ry. Co. v. Schram, 138 S. W. 195. We think it was properly held in the last-cited case that mere proof that the place of

the accident is within the switching bounds arbitrarily established by the company, but not in fact used by it for switching purposes, is not sufficient to exempt the railroad from liability. As was said in H. & T. C. Ry. Co. v. Holbert, 182 S. W. 1180:

"The burden of proof was upon appellant to show that it could not fence its track at the point where the injury occurred. It is true that the animal was killed within the switch limits, but there is nothing to show that the railway could not have been fenced at this point without inconveniencing the public; and, if this were true, then it is not necessary for appellee to show negligence on the part of appellant in order to recover; the mere killing being enough" —citing authorities.

We think the quotation above states the correct doctrine, provided the term "public" includes the employés of a railway company. Therefore we hold there was no error in submitting special issue No. 9, quoted above.

[5, 6] The fifth assignment urges error in submitting special issue No. 10, to wit:

"Was the defendant or its agents negligent in striking said cattle after they discovered them on the right of way?"

No issue of discovered peril had been made by the pleadings, and we are inclined to the opinion that this issue should not have been submitted, but we cannot say that any prejudicial error is here presented. The finding upon this issue was not necessary to support the judgment rendered, and therefore the submission thereof by the court and the finding thereon by the jury would become immaterial. Morris v. McSpadden et al., 179 S. W. 554; Kelley v. Ward, 94 Tex. 289, 60 S. W. 311; Douglas v. Baker, 79 Tex. 499, 508, 15 S. W. 801. Therefore the fifth assignment and the thirteenth, the latter attacking the finding of the jury as to this issue, are overruled, and also the sixth, which complains of the refusal of the court to submit a charge tendered placing the burden of proof upon the plaintiff to establish the contention that the track and grounds of defendant used for switching purposes could have been fenced without endangering or inconveniencing its employés doing such switching. We think, under the authority of Railway Co. v. Holbert, supra, and Railway Co. v. Dawson, 174 S. W. 850, the burden of proof was on the defendant to show that it was not permitted by law to fence the place where the accident occurred, or that to do so would endanger train operatives, or that the public would be inconvenienced thereby. .

[7] The seventh assignment complains of the failure of the court to instruct the jury to not consider the arguments and statements of plaintiff's counsel that the terminals of the switches constitute the switching limits. The testimony of John Beer, an employé of and witness for the defendant, was to the effect that there was no yard limit board at Decatur, and that the extreme switch was the yard limit. The exemption from liability under the statute (article 6603, Vernon's Sayles' Texas Civil Statutes), read into said statute by judicial construction, rests upon necessity, and where the necessity ceases the exemption also ceases. We think the argument complained of was permissible under this doctrine and under the evidence in the case.

[8] Nor do we find any error, as complained in the eighth assignment, in the refusal of the court to instruct the jury not to consider the argument of plaintiff's counsel to the effect that, inasmuch as the witness Milholland could see the train 150 yards on the night in question, therefore the engineer of such train which killed the cattle could have seen the cattle at a distance of 150 yards, and could therefore have stopped the train in time to have prevented striking the cattle. This objection, as shown by the bill of exception, is predicated, not upon the theory that the argument complained of improperly introduced the issue of discovered peril, but that it was an improper comparison, "and calculated to prejudice and mislead the jury by making them believe that the engineer behind the headlight could see as far out into the dark as one out in the dark could see the train with its headlight," etc. Even if it be conceded that the argument of plaintiff's counsel was not logical, and that the deduction he sought to draw was not justified by the facts, the court would not be required to instruct the jury to disregard and not consider such argument. The facts being admitted, the jury may accept or reject the deductions and conclusions which counsel may in argument see proper to draw.

[9] The ninth specification complains of the finding of the jury as being contrary to and unsupported by the evidence to the effect that the cattle were not killed within the switching limits of defendant's yards, and the tenth assignment urges the lack of evidence to support the finding of the jury in response to the eighth issue, to the effect that the place where the cattle were struck was not used by defendant company for the purpose of switching its cars or trains thereover during the year 1913. It is true that a number of witnesses, principally employés of defendant, testified to facts which would indicate that the place where the cattle were killed was used by the railway company for the purpose of switching during the year of the accident. But the testimony of Mitchell and Moss heretofore mentioned tended to show that the place of the accident was not used during said year, and had not been so used for years prior thereto, for the purpose of switching, and in this condition of the record we would not be authorized in holding that there was not sufficient evidence to warrant and support the verdict as to these two issues. In passing upon whether there is sufficient evidence to sustain a verdict, an appellate court must reject all evidence favorable to defendant, and consider only that sustaining the verdict, and if the jury might have reached such a verdict on the

evidence, the court on appeal cannot set it aside. Cartwright v. Canode, 106 Tex. 502, 171 S. W. 696; F. & M. Gin Co. v. Simmons, 178 S. W. 621.

[10] A jury is not required to believe a witness, although he makes a plain statement of what is not impossible, and is neither impeached nor contradicted, but may discredit him on account of the manner of testifying and attendant circumstances. G. H. & S. A. Ry. Co. v. Murray, 99 S. W. 144 (writ denied); Traction Co. v. Berry, 187 S. W. 415. Therefore both assignments are overruled, and likewise the eleventh, twelfth, fourteenth, and fifteenth, which present questions kindred to those discussed with reference to the ninth and tenth assignments.

All assignments are overruled, and the judgment is affirmed.