CHARLES KAUFMAN v. THE STATE.

No. 2858.   Decided March 11, 1914.

Rehearing denied April 8, 1914.

**1.—Murder—Evidence—Supporting Testimony.**

Where, upon trial of murder, a witness for the defendant testified that she knew the deceased, and that shortly before the killing he and others called at her place and deceased told her he was going down to defendant's saloon and kill him; that as soon as he left she telephoned defendant, and the State sought to impeach this testimony, it was reversible error to reject testimony offered by the defense to show that in half an hour after the killing, the said defendant's witness detailed the same facts she had testified to on the trial to one of defendant's witnesses.

**2.—Same—Rule Stated—Supporting Testimony.**

When it is sought to be shown that a witness has testified under corrupt motives or is guilty of fabrication, proof that the witness had made similar statements before the motive alleged existed to make a false statement is admissible, and the witness may be sustained by showing that he made the same statements shortly after the event and prior to the time the alleged motive existed. Following Williams v. State, 24 Texas Crim. App., 637, and other cases.

**3.—Same—Evidence—Irrelevant Testimony.**

Where, upon trial of murder, the defendant did not testify on the trial of the case, it was error to admit testimony that the defendant was the owner of certain disorderly houses, to show what kind of people he collected rent from, as defendant could only be tried for the offense with which he was charged.

**4.—Same—Practice in District Court.**

Upon trial of murder, the court properly used all means in maintaining order in his court and compelled the defendant to desist from abusing the county attorney, and he should have applied the same methods in repressing State's counsel in the latter's position to inject improper testimony into the case.

**5.—Same—Evidence—Declarations of Third Party.**

Upon trial of murder, it was error to permit a witness to testify as to what took place between him and defendant's son prior to the time the witness said that they went to defendant's father, it not being connected up properly.

Appeal from the Criminal District Court of Dallas.   Tried below before the Hon. Robt. B. Seay.

Appeal from a conviction of murder; penalty, eight years imprisonment in the penitentiary.

The opinion states the case.

*M. T. Lively* and *Barry Miller,* for appellant.—On question of reject-

ing supporting testimony and charge of court: Ware v. State, 68 Texas Crim. Rep., 376, 152 S. W. Rep., 1074; Jones v. State, 38 Texas Crim. Rep., 87; Ballow v. State, 42 id., 261.

*C. E. Lane,* Assistant Attorney General, and *Currie McCutcheon,* County Attorney, for the State.—On ˋquestion of collecting rents from disorderly houses: Brittain v. State, 85 S. W. Rep., 278.

HARPER, Judge.—Appellant was prosecuted and convicted of murder, and his punishment assessed at eight years confinement in the penitentiary.

Annie Smith was a witness for the defendant, and testified that she knew Moskowitz, the deceased, and that he and four others called by her place, and while there told her he was going down to appellant's saloon and kill him; that he at this time had a pistol, and as soon as Moskowitz left she telephoned appellant. It further appears from the record that Moskowitz did go directly to the saloon of appellant, and he and his friends went into the saloon, when the difficulty occurred in which Moskowitz lost his life. To break the force of Annie Smith's testimony, the State sought to impeach her, and in addition thereto to show that she was now in the employ of appellant collecting rents for him. This employment of Annie Smith, if she was employed by appellant, took place subsequent to the homicide, and the State introduced this testimony to show her interest, bias and that her testimony was of recent manufacture or origin. When the State offered this testimony, the defendant then introduced J. J. Ledbetter, a deputy sheriff, who would have testified that in a half hour after the killing of Moskowitz by appellant, Annie Smith detailed to him the same facts she had testified to on this trial—that deceased was at her place, had a pistol, and said he was going to Kaufman's saloon and kill him. The court sustained the State's objection to this testimony. In this the court erred. It has always been held by this court that when it is sought to be shown that a witness had testified under corrupt motives, or where the testimony goes to charge the witness with recent fabrication, proof that the witness had made similar statements before the motive alleged existed to make the false statement, is admissible, and the witness may be sustained by showing that she had made the same statement shortly after the event and prior to the time the alleged motive existed. Williams v. State, 24 Texas Crim. App., 637; English v. State, 34 Texas Crim. Rep., 190; Reddick v. State, 35 Texas Crim. Rep., 463; Mitchell v. State, 36 Texas Crim. Rep., 278; Jones v. State, 38 Texas Crim. Rep., 87; Keith v. State, 44 S. W. Rep., 849.

Again it is shown by the record that the State diligently sought to inject and did inject into the record the fact that defendant was the owner of certain houses which he rented in the reservation, and owner of certain houses known as "cribs," all of which were being used as houses of prostitution. The defendant did not testify on the trial of the case.

The court shows by his qualification that he attempted to keep from the jury the fact that these houses were rented by appellant as houses of prostitution, and after the proof had been made, he would exclude it from the consideration of the jury, but the prosecuting officers would again ask the questions from other witnesses and get that fact before the jury, and in one instance when the court sustained the objection, the county attorney in his insistence said he was entitled to show "the kind of people the rent was collected from; that he had a right to show what character of man he (appellant) is," etc. In this we think the county attorney was wrong. When a person is on trial for murder, and he does not elect to take the stand and testify, only the facts relating to that transaction are admissible. The fact that he is an immoral man and is engaged in an immoral business, and has violated other provisions of the criminal code is not admissible. There are a number of bills of exceptions of this character relating to the testimony of witnesses, but we do not deem it necessary to mention each of them. In some of them the court in qualifying the bill says: "There was a continual struggle on the part of the defendant to show that the State's witnesses were from a disreputable district, and on the part of the State to show that the defendant and his witnesses were engaged in disreputable business." Why the State thought it had a right to show that defendant had engaged in disreputable business, when he did not testify as a witness, is beyond our understanding. A man can not be sent to the penitentiary on "general principles," although it might be a good thing for the community that he be "removed from its midst." He can only be tried for the offense with which he is charged, and testimony only relevant to that issue should be admitted. The court apparently tried to keep this testimony out, but did not succeed in doing so, from the number of times he excluded such testimony, and from the record now before us. Had he applied the same methods to counsel for the State and defendant when they declined to obey his rulings, after he had held this testimony inadmissible, as he did to the defendant when he became "obstreperous," they would not have sought to inject it into the case the second time. And here we will say, when the defendant, in open court, called the county attorney a liar, arose and started towards him, the court was justified in using all the means he did use in maintaining order in his court, and this bill presents no error. We only regret he did not require counsel to pay the same respect to his rulings in the premises, and if so, it might not have been necessary to reverse this case. We hope on another trial the evidence will be restricted to ascertaining whether appellant killed deceased, and if so, of what grade of homicide he is guilty, if any, or whether he was justifiable in so doing, and evidence legitimately bearing on those issues.

Again we think the court erred in permitting the witness Belmear to testify to what took place between him and appellant's son, Phil Kaufman, prior to the time he says that they went to appellant's father. What took place in the conversation in which appellant was engaged was admissible, and if appellant told the witness to do what Phil wanted

him to, and he would make it all right, that what Phil said to him subsequently would be admissible, but as Phil testified that his father did not say what Belmear said he did, and that he did not go with him to see his father, the court should have instructed the jury that unless they found that appellant did so state, they would not consider that portion of his testimony.

Other matters are complained of, but we do not deem it necessary to discuss them.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

[Rehearing denied April 8, 1914.—Reporter.]