# JANUARY, 1917

### W. J. EDWARDS V. THE STATE.

#### No. 4318.   Decided January 10, 1917.

**1.—Murder—Sufficiency of the Evidence.**

Where, upon trial of murder, the evidence was sufficient to support the conviction under a proper charge of the court, there was no reversible error.

**2.—Same—Continuance—Motion for New Trial—Presumption.**

Where the testimony of the absent witness would have been merely cumulative, and the trial court heard the evidence upon the motion for new trial as to this matter, it must be presumed that the action of the court in overruling the motion was sustained by the testimony heard, where the record did not disclose the same. Following Ethridge v. State, 74 Texas Crim. Rep., 635, and other cases.

**3.—Same—Evidence—Credibility of Witness—Remarks by Court.**

Where, upon trial of murder, the nephew of the defendant, who testified for the latter, denied that in a conversation with the deceased, just before the homicide, he told him that the defendant would settle with him for making a certain statement; whereupon, the State introduced a witness who testified in substance that said defendant's witness made said statement to the deceased, and in ruling upon the matter, the court remarked that he had admitted the testimony to enable the jury to pass on the credibility of said defendant's witness, and afterwards, on request of the defendant, instructed the jury not to consider the testimony of said State's witness for any purpose, there was no reversible error.

**4.—Same—Evidence—Conversation—Conspiracy—Credibility of Witness.**

Upon trial of murder, there was no error in admitting in evidence the whole of a conversation between one of defendant's witnesses and the deceased which included the statement of said defendant's witness that the defendant would settle with the deceased, first, as it was part of the conversation introduced in evidence by the defendant; it was a circumstance tending to show a conspiracy between the witness and the defendant to kill deceased; and third, it enabled the jury to pass upon the credibility of said witness, and the court's remark to that effect was not on the weight of the testimony; besides, the whole matter was withdrawn from the jury. Following Miller v. State, 79 Texas Crim. Rep., 9, and other cases.

**5.—Same—Evidence—Allusion to Former Trial.**

Where, upon trial of murder, each side in the examination and cross-examination of many of the witnesses, repeatedly asked them whether or not they had testified on the former trial of the instant case, etc., and the jury was made aware thereby of the fact that a previous trial had been had, and the court instructed the jury not to consider the question which was asked about a new trial, and properly limited the testimony to purposes of impeachment, etc., there was no reversible error. Following Witty v. State, 75 Texas Crim. Rep., 440, and other cases.

**6.—Same—Self-defense—Charge of Court—Unlawful Attack.**

Where, upon trial of murder, the testimony did not raise any issue as to an attack by the deceased or any other unlawful attack, and the court fully

instructed the jury on defendant's claimed self-defense, there was no reversible error in the court's failure to submit a charge under article 1107, Penal Code.

**7.—Same—Manslaughter—Charge of Court.**

Where, upon trial of murder, the court submitted a correct charge on manslaughter, applicable to the facts of the case, there was no reversible error.

Appeal from the District Court of Cherokee. Tried below before the Hon. L. D. Guinn.

Appeal from a conviction of murder; penalty, six years imprisonment in the penitentiary.

The opinion states the case.

*Martin Feagin, I. D. Fairchild, W. J. Townsend, Mantooth & Collins,* and *Norman, Shook & Gibson,* for appellant.—On question of impeaching defendant's witness and remarks by the court in ruling thereon: Matthews v. State, 69 Texas Crim. Rep., 639; Bradshaw v. State, 68 id., 622; Scott v. State, 72 Texas Crim. Rep., 26; Walling v. State, 59 id., 279; Blocker v. State, 125 S. W. Rep., 409; Newton v. State, 58 Texas Crim. Rep., 316; Melton v. State, 124 S. W. Rep., 910; Betts v. State, 65 Texas Crim. Rep., 358; Drake v. State, 65 id., 282; McMahan v. State, 133 S. W. Rep., 558; Crowder v. State, 77 Texas Crim. Rep., 122; McPherson v. State, 79 id., 93; Vernon's C. C. P., art. 787.

On question of allusion to former trial: Hamilton v. State, 2 S. W. Rep., 139; Hamilton v. State, 40 Texas Crim. Rep., 464; Benson v. State, 56 id., 52; Wyatt v. State, 124 S. W. Rep., 929; May v. State, 59 Texas Crim. Rep., 141; Eads v. State 74 id., 628; Baines v. State, 43 Texas Crim. Rep., 490.

On question of court's charge on self-defense: Kingsley v. State, 147 S. W. Rep., 249; French v. State, 55 Texas Crim. Rep., 538; High v. State, 26 Texas Crim. App., 545; Kendall v. State, 8 id., 569.

On question of court's charge on manslaughter: Warthan v. State, 41 Texas Crim. Rep., 385; Vining v. State, 66 id., 316; Barnes v. State, 61 id., 37; Love v. State, 71 Texas Crim. Rep., 79; Snead v. State, 71 Texas Crim. Rep., 299; Lee v. State, 66 id., 567; Carter v. State, 75 id., 110; McGregor v. State, 71 id., 604; Winn v. State, 54 Texas Crim. Rep., 538.

*E. B. Hendricks,* Assistant Attorney General, and *Beeman Strong,* for the State.

PRENDERGAST, Judge.—Appellant was convicted of murder. This is the second appeal by him. The first is reported in 75 Texas Crim. Rep., 647, 172 S. W. Rep., 227. A sufficient statement was made on the other appeal so as to render it unnecessary to make any now.

Appellant has a large number of bills of exceptions; some to the overruling of his several motions for a continuance; some to evidence admitted; others to evidence excluded; and several to refused charges.

We have carefully considered all of them and find it unnecessary to take them up separately. We will discuss such of them as are regarded material.

The record shows, as did the record on the former appeal, that appellant on his application secured continuances before this trial occurred. How many, is perhaps not definitely shown by this record. The homicide occurred on November 8, 1910; appellant was soon thereafter indicted; so that the case has been pending for six years or more now. The venue had been changed from Angelina County, where the first trial occurred, to Cherokee County, where this trial occurred. Several witnesses for the State testified that deceased made no attempt to cut appellant with his knife at the time appellant knocked him down, and after he was down struck him at least two more licks with a large stick, which the testimony showed was a deadly weapon in the manner in which it was used. Appellant claimed that deceased did cut at him with his knife at the time he first struck him with the stick, and claimed that he cut one prong of his suspenders and his shirt in front. The State's witnesses testified, in substance, that appellant's shirt and suspenders were not cut immediately after appellant killed deceased and when he walked away from him. Appellant himself, and three other witnesses for him, testified that his suspenders and shirt were cut by deceased and that they saw his garments so cut immediately after appellant left deceased where he had felled him to the ground. Appellant's ground for a continuance was the absence of one witness, Red, whom he claimed would testify to the same on this point that he himself and his other three witnesses testified. In addition to his application for a continuance, which was overruled, he sought a new trial on the ground of the absence of said witness. The State on this, and other grounds, too, contested appellant's motion for a new trial. The bills on the subject, and the judgment of the court, all show that the court heard evidence on this contest when he acted on the motion for a new trial, and after hearing it, denied him a new trial. What that evidence was is in no way disclosed by this record. The court's action in overruling his motions for a continuance and denying him a new trial on that ground was correct on two propositions: (1) The absent witness' testimony would have been merely cumulative, and this court has always held that, under such circumstances, the trial court's action in overruling an application for a continuance presents no error. 1 Branch's Ann. P. C., sec. 322, where a large number of cases are collated. (2) As the evidence heard by the trial judge on this ground of the motion for a new trial is in no way disclosed, this court must presume, and always does, that the action of the court was sustained by the testimony heard. Ethridge v. State, 74 Texas Crim. Rep., 635; Sorrell v. State, 79 Texas Crim. Rep., 437, 186 S. W. Rep., 388, where a large number of other cases are cited.

Bob Edwards, appellant's nephew, testified for him that on the same day appellant killed deceased he, the witness, was at deceased's store

and got into a conversation with deceased, wherein the deceased asked about the election which was then being held, and stated to him that he hoped it would not be carried on like the last two were—that the last two elections were stolen out, the last one especially. That he told deceased that appellant was the presiding officer at the last election referred to, and deceased reiterated that that election was "stole out"— that there were more votes cast for Fowler than he got there; and that he stated to deceased that his uncle had lived there thirty years and the deceased was the first man that had ever accused him of anything dishonest. On this point, on cross-examination, the State asked him if he then didn't say to deceased that appellant would settle with him about that. He denied making any such statement. The State claimed that Mr. Delaney was present and heard this. Later, the State introduced Delaney, who swore, in substance, that Bob Edwards did make that statement at the time to deceased. Appellant objected to the testimony of Delaney on many grounds. The point was discussed before the court at the time by the various attorneys on both sides. One of the State's attorneys contended that the testimony was admissible as a circumstance, together with many others, to show that Bob Edwards was a principal to the killing of deceased a few hours later by appellant. The district attorney contended, in addition, that it was admissible for the purpose of impeaching the witness Bob Edwards' testimony. In ruling on the matter at the time, the judge said he would admit the testimony "to enable the jury to pass on the credibility of the witness Bob Edwards." In charging the jury, the judge gave this charge, requested by appellant: "You will not consider the testimony of the witness O. Denaley for any purpose." Appellant not only objected to the testimony of said Delaney, as stated, but also objected to what the court said at the time he admitted it,—that he did so "to enable the jury to pass on the credibility of the witness Bob Edwards"—claiming that that ruling of the court was a comment on the weight of the evidence.

In our opinion, the testimony of said Delaney was admissible on three grounds: (1) It was a part of the same conversation with deceased that Bob Edwards had, a part of which appellant proved, and the State, under the statute, was entitled to the balance of the conversation. (Art. 811. C. C. P.) We are aware that Delaney and Bob Edwards did not fix the same hour at which the conversation occurred between Bob Edwards and deceased, but Edwards testified that that was the only time that day that he saw and had any conversation with deceased—that he did not see him again at all until just immediately before he was killed, which was some hours after the conversation. (2) Without reciting it fully, we think the State's contention that Delaney's testimony was admissible as one circumstance tending to show a conspiracy between Bob Edwards and appellant to kill deceased is correct. Both he and appellant testified that soon after said conversation with deceased, Bob Edwards took his uncle off to one side

privately and told him about what had occurred and what deceased had said to him, and appellant himself, in effect, testified that it was because of said deceased's statement about him that he sought him for an explanation at the time he killed him. The testimony further shows that deceased went from his store to the voting place where appellant and Bob Edwards were. While they denied seeing him at the time, all the testimony puts all the parties at such a place where they could, and probably did, see him, and that as deceased went into the polling place to vote, they together started down the road where they knew deceased would have to pass along in going back to his store from the voting place, and that each stopped on the side of the road and waited till deceased did come along, when appellant attacked and killed him. Appellant himself swore that when he first approached deceased and asked for an explanation, deceased denied making the statement, and he thereupon called for Bob Edwards. Bob Edwards testified he heard the call and started to appellant at the time and that he got nearly to him before appellant finally quit beating deceased, and that they then turned and left, Bob Edwards following appellant. Another witness swore that at the time appellant was striking deceased, Bob Edwards called out to him: "Kill the son of a b——." (3) That the testimony of Delaney was admissible for the purpose of impeaching Bob Edwards. As to the court's remark at the time he admitted the evidence that he did so to enable the jury to pass upon the credibility of Bob Edwards, this was not a comment on the weight of the testimony. The court by it expressed no opinion one way or another but said he admitted it to enable the *jury* to pass on the question. If the evidence had remained before the jury, just such a charge would have been proper. This court uniformly approves such charges when such testimony is admitted for impeachment purposes only.

But, if we should be mistaken in any or all of these grounds on which we think the testimony was admissible, the whole matter was cured by the charge of the court withdrawing it all from the consideration of the jury and telling the jury specifically, at appellant's instance, not to consider the testimony of Delaney for any purpose. Miller v. State, 79 Texas Crim. Rep., 9, 185 S. W. Rep., 29, and cases there cited; Martoni v. State. 74 Texas Crim. Rep., 90, and cases there cited.

Each side in the examination and cross-examination of many of the witnesses repeatedly asked them whether or not they had testified on the former trial of this case, and if on that trial they did not testify so and so. All this was proper, and no objection was made to it at the time by either side. In fact, from the various witnesses and their examination by both sides, the jury were unquestionably made aware of the fact that a previous trial of appellant in this case had been had. Among other witnesses, appellant introduced O. Burns, who testified to what was claimed, and may have amounted to, a threat by deceased against appellant, and he testified on no other subject. The State then,

on cross-examination, took him up and showed by him that that was the first time he had ever testified in the case, that he had not testified on the former trial, and then undertook to show by him that he had taken an active part in appellant's behalf immediately after the other trial. The witness, in substance, claimed that it was some time after the previous trial before he had ever disclosed to anyone—appellant or anyone else—what he had testified on this trial. The State tried to bring him down to immediately, or very soon, after the other trial when he became active and then disclosed his testimony to appellant, and along the same line when the witness was trying to avoid fixing the date, finally in order to fix the date asked him, in substance, if he didn't sign an affidavit in order to get appellant a new trial. The appellant was objecting all the time to all this examination, and when the State asked this last question he objected and protested. The court immediately and promptly sustained his objection to the last question— if he didn't make the affidavit in order to get defendant a new trial— and immediately instructed the jury not to consider the question for any purpose; and no other question about any motion for new trial was asked. The court, in qualifying the bill states that the homicide occurred in 1910 and that this witness had lived in the same neighborhood with appellant all the time since then, and the court was of the opinion that the cross-examination along the lines indicated was not improper, but legitimate cross-examination of the witness, and he states specifically, "that it was not the purpose or intention of State's counsel to get anything before the jury that was not legitimate." We think under the many decisions of this court this is no ground for reversal. Witty v. State, 75 Texas Crim. Rep., 440; Coffman v. State, 73 Texas Crim. Rep., 295; Smith v. State, 52 Texas Crim. Rep., 344; Moore v. State, 52 Texas Crim. Rep., 336; Benson v. State, 56 Texas Crim. Rep., 52, and other cases cited in these cases. In the Witty case, supra, the State, for the purpose of impeaching another witness, who had testified on a former trial of that case, introduced the court stenographer and had him to identify the said witness' testimony given on the previous trial. He was then asked by the State's attorney if the copy of the testimony he had was the same that was filed in the Court of Criminal Appeals, and the witness answered yes. Appellant objected to the question and answer because it was an improper reference to the fact that defendant had on a previous trial been convicted. The court in that case, as in this, instructed the jury then and there not to consider said question and answer for any purpose, and the court, in addition in that case, in his general charge to the jury, told them that it had developed during the trial that appellant had theretofore been tried in that case, and instructed them that the result of that trial did not concern them and not to consider it, etc., in making up their verdict; that their province was to try the case according to the evidence which had been submitted to them under the rulings of the court and the law applicable thereto as given in charge by the court

at the time. Likewise, in this case, the court charged the jury: "There has been some evidence introduced before you as to this case being tried in the District Court of Angelina County, Texas, some time heretofore. You are charged that you can not take into consideration for any purpose as to any former trial or the result of such trial, nor will you discuss or consider the same, but you will try this case on the evidence as introduced before you, and the law as given you in charge and render your verdict accordingly."

The court, in his charge, fully and properly submitted appellant's claimed self-defense in every way that it was raised by the testimony. The testimony did not raise any issue as to any attack, real or apparent, by deceased on appellant other than to kill him or to do him serious bodily injury. It did not raise any issue as to any other unlawful and violent attack. Hence appellant's contention that the court ought to have submitted that issue under article 1107, P. C., can not be sustained.

The record does not sustain appellant in his contention that the court's charge on manslaughter restricted the jury to the consideration of what occurred at the time of the homicide which might have aroused appellant's passion and did not permit them to consider what had occurred before. The court, after defining manslaughter in all of its terms as prescribed by the statute, in addition charged the jury, as follows: "In passing upon the question of the emotions of the mind such as anger, rage, sudden resentment or terror, you are charged that you may look to all of the facts and circumstances in evidence happening before the homicide and at the time of the homicide, which would commonly produce a degree of anger, rage, sudden resentment or terror in the mind of a person of ordinary temper sufficient to render the mind incapable of cool reflection, and if you find that the mind of the defendant was thereby aroused to a degree of anger, rage, sudden resentment or terror sufficient to render it incapable of cool reflection, you will, if you so find beyond a reasonable doubt, convict the defendant of manslaughter." This covered the very ground that appellant complains the charge did not cover.

The judgment is affirmed.

*Affirmed.*