## N. C. PATTERSON v. THE STATE.

### No. 5623.   Decided March 10, 1920.

**1.—Murder—Special Judge—Constitutional Law—Agreement of Parties.**

Where, upon trial of murder, the case was tried before a special judge, and the record showed on appeal, that some weeks before the trial, a written agreement was signed by the attorneys for both sides agreeing upon a special judge to try the case, the regularly elected judge of the district having been of counsel in the case and disqualified, and without calling upon any other judge to exchange districts, the Governor designating the appointment of said attorney agreed upon, who tried the case, there was no reversible error.

**2.—Same—Statutes Construed—Constitutional Law—Special Judge.**

The provisions of the Constitution, declaring that the parties may by consent appoint a special judge, apparently requires no legislation to render it effective, and granting the authority of the Legislature to pass laws facilitating the exercise of the right given, they cannot be inconsistent with the terms or restrictive of the right extended to the parties by the Constitution, and this election of the special judge by consent was in accord with the Constitution and must stand although not in accord with the statute. Following Holly v. State, 14 Texas Crim. App., 505 and other cases.

**3.—Same—Evidence—Size of Deceased.**

Where, upon trial of murder, the height of the platform near which the deceased stood on the ground, in comparison with the height of the deceased, was properly inquired into on cross-examination, under the facts of the instant case, and there was no reversible error.

**4.—Same—Evidence—Age of Deceased.**

Upon trial of murder there was no reversible error, under the facts of the instant case, to admit evidence that the deceased was about sixty-one years of age. Following Bearden v. State, 47 Texas Crim. Rep., 271, and other cases.

**5.—Same—Other Offenses—Cross Examination—Motive of Deceased.**

Where, upon trial of murder, defendant had introduced evidence of threats by the deceased and various other prior troubles, and statements of the deceased indicating that he regarded the defendant as a violator of the law, etc., there was no error in permitting State's counsel, on cross-examination of defendant, to ask various questions framed with the view of showing by circumstances and otherwise that the defendant had been guilty of various misdemeanors to combat the motive of malice on the part of the deceased. Following McIntosh v. State, 85 Texas Crim. Rep., 417; 213 S. W. Rep., 659, and other cases.

**6.—Same—Former Conviction—Rule Stated—Practice in District Court.**

While neither the State's counsel nor members of the jury are authorized to disclose the former conviction, it is not reversible error for this fact

to be referred to when it was already known to the jury trying the case, and in the instant case the court having promptly withdrawn the matter from the jury's consideration there was no reversible error under the facts of the instant case. Following Moore v. State, 52 Texas Crim. Rep., 336, and other cases.

### 7.—Same—Evidence—Fabrication—Lack of Memory.

Where there was testimony going to show that on a second trial defendant gave a different reason for his lack of memory, from that of the present trial, there was no reversible error to permit the State to ask defendant on cross-examination if, on a second trial, he had not ascribed his absence of recollection of the incidents of the first trial to the fact that his mental condition was then impaired by syphilis and drink, etc., the State contending that the new fact was a fabrication, and his claim that he did not remember what had occurred in the first trial was a subterfuge, etc..

### 8.—Same—Evidence—Appearance of Deceased.

Where the defense's testimony described the appearance of the deceased, and that he was walking fast, etc., there was no error to show on cross-examination that at the time referred to the deceased was limping.

### 9.—Same—Argument of Counsel—Invited Argument.

Where, it appeared from the record by the statement of the trial judge that the improper remark of State's counsel was invited by the argument of defendant's counsel, there was no reversible error, with reference to the age of the deceased. Following Craft v. State, 57 Texas Crim. Rep., 267, and other cases.

### 10.—Same—Argument of Counsel—Reputation of Defendant.

Where, it appeared from the record that defendant had assailed the character and reputation of the deceased, both by evidence and argument, the remarks of the prosecuting attorney to the effect that no effort had been made to attack the reputation of the defendant, because it was not permissible by law, while improper was not reversible error. Following Wright v. State, 60 Texas Crim. Rep., 387, and other cases.

### 11.—Same—Manslaughter—Charge of Court—Requested Charges.

Where, upon trial of murder, the court's charge on manslaughter was quite broad in instructing the jury to consider all the acts and words of the deceased in determining whether adequate cause existed, there was no error in refusing to submit the requested charges which singled out particular parts of the evidence and others referring to the question of cooling time. Following Ham v. State, 98 S. W. Rep., 877.

### 12.—Same—Self Defense—Charge of Court—Communicated Threats.

Where, upon trial of murder, the court gave a charge on self-defense, which was in no wise restrictive of defendant's perfect right of self-defense, and also a charge on the law of communicated threats, there was no error in refusing the special requested charges of the defendant singling out various matters in evidence and instruct the jury upon their effect. Following Seeley v. State, 43 Texas Crim. Rep., 69, and other cases.

Appeal from the Criminal District Court of Tarrant. Tried below before the Honorable John J. Hiner, Special Judge.

Appeal from a conviction of murder; penalty: twenty-five years imprisonment in the penitentiary.

The opinion states the case.

*Marvin V. Simpson, John W. Estes* and *Preston Martin,* for appellant.—On question of appointing special judge: Cohn v. Sacuz et al, 194 S. W. Rep., 685; Dunn v. Home Nat. Bank, 181 S. W. Rep., 699, and cases cited in the opinion.

On question of referring to age of the deceased: Ballard v. State, 160 S. W. Rep., 716, and cases cited in the opinion.

On question of District attorney's conduct and cross-examination of witness: Wyatt v. State, 124 S. W. Rep., 929; Clements v. State, 153 S. W. Rep., 1137; Sorrell v. State, 169 S. W. Rep., 299.

On question of reputation: Henley v. State, 195 S. W. Rep., 197, and cases cited in the opinion.

*Alvin M. Owsley,* Assistant Attorney General, for the State.

*Jesse M. Brown,* District Attorney.

On question of special judge: Parker County v. Jackson, 23 S. W. Rep., 924; Oates v. State, 56 Texas Crim. Rep., 571, and cases cited in opinion.

On question of size of deceased: Marsdan v. State, 126 S. W. Rep., 1161; Douglass v. State, 124 S. W. Rep., 935; Hunter v. State, 129 S. W. Rep., 136, and cases cited in opinion.

On question of allusion to former conviction: Smith v. State, 52 Texas Crim. Rep., 344, and cases cited in opinion.

On question of self defense: Dougherty v. State, 128 S. W. Rep., 401, and cases cited in opinion.

MORROW, JUDGE.—The conviction was for murder, and punishment fixed at twenty-five years confinement in the penitentiary. Former appeal reported in 83 Texas Crim. Rep., 169, 202 S. W. Rep., 88.

The case was tried before a special judge. The legality of his appointment is questioned. Some weeks before the trial there was made, reduced to writing, signed by the attorneys, and filed in the case, an agreement containing the following:

"It is therefore agreed by and between the State of Texas, plaintiff in said cause, acting through its duly authorized agent, the Honorable Jesse M. Brown, County Attorney of Tarrant County, Texas, and the defendant, N. C. Patterson, acting through his attorneys of Record, Messrs. Simpson & Estes, that the Honorable John J. Hiner, a member of the bar of Tarrant County, Texas, is a proper and suitable person to sit in said cause, and is in no way disqualified to so act; and the parties aforesaid hereto sign their names, as aforesaid, in testimony

of this agreement that the said John J. Hiner, is in all respects entirely acceptable and agreeable to said parties to sit in said cause, and said parties hereby respectfully request His Excellency W. P. Hobby, Governor of the State of Texas, to appoint the said John J. Hiner of Fort Worth, Texas, as Special Judge in this cause.''

Hon. Geo. E. Hosey, the regularly elected judge of this district having been of counsel in the case was disqualified by the terms of the Constitution, and without calling upon any other judge to exchange districts, the Governor designated by appointment Hon. John J. Hiner, who, after regularly qualifying, sat in the case.

The authority of Judge Hiner is challenged on the ground that his selection and appointment was not in accord with Article 618, C. C. P., which is as follows:

"Whenever any case or cases, civil or criminal, are pending in which the .ditrict judge is disqualified from trying the same, no change of venue shall be made thereby; but the judge presiding shall immediately certify that fact to the Governor, whereupon the Governor shall designate some district judge in an adjoining district to exchange and try such case or cases, and the Governor shall notify both of said judges of such order; and it shall be the duty of said judges to exchange districts for the purpose of disposing of such case or cases, and, in case of sickness or other reasons rendering it impossible to exchange, then the parties or their counsels shall have the right to select or agree upon an attorney of the court· for the trial thereof; *and, in the event the district judges shall be prevented from exchanging districts and the parties and their counsels shall fail to select or agree upon an attorney of the court for the trial thereof, which fact shall be certified to the Governor by the district judge or the special judge, whereupon the Governor shall appoint a person legally qualified to act as judge in the trial of the case.*''

State's counsel insists that Section 11 of Art. 5, of the Constitution, supports the selection of Judge Hiner. From it we quote:

"When a judge of the district court is disqualified by any of the causes above stated, the parties may, by counsel, appoint a proper person to try said case, or upon their failing to do so, a competent person may be appointed to try the same in the county where it is pending, in such manner as may be prescribed by law.

"And the district judges may exchange districts, or hold courts for each other when they may deem it expedient, and shall do so when required by law. This disqualification of judges of inferior tribunals shall be remedied and vacancies in their offices filled as may be prescribed by law.''

We are referred by the appellant to Kruegel v. Nash, 72 S. W. Rep., 601; Alley v. Mayfield, 62 Texas Civ. App., 231, 131 S. W. Rep., 295; Savage v. Umphres, 62 Texas Civ. App., 209, 131 S. W. Rep., 291; Summerlin v. State, 69 Texas Crim. Rep., 275, 153 S. W. Rep., 890; and Oates v. State, 56 Texas Crim. Rep., 571, State's counsel refers to

Early v. State, 9 Texas Crim. App., 476; Thompson v. State, 9 Texas Crim. App., 662; Reed v. State, 55 Texas Crim. Rep., 138; Rosetti v. Benavides, 195 S. W. Rep., 210; Dunn v. Bank, 181 S. W. Rep., 699. Light is thrown upon the question by all of the cases, though in none of them did the facts involved require the decision of the question now before us.

In Krengel v. Nash, the effort was to compel by mandamus the disqualified district judge to permit the selection of a special judge by agreement, and to prevent him from certifying his qualification to the Governor. The relief was denied. No special judge had been agreed upon, nor did it appear that such agreement could be made.

In Alley v. Mayfield, the district judge certified his disqualification to the Governor, who called upon the judge of another district to exchange. This was done, and the judgment rendered was attacked. The court said the material question was "whether the Governor was authorized to direct the Hon. J. N. Browning to exchange with the Hon. L. S. Kidder, whose district adjoined that of Judge Browning, and thus empower the said Browning to try the case." The court held the judgment valid.

A similar ruling was made in Savage v. Umphres, 131 S. W. Rep., 292.

In Summerlin v. State, it was held that the absence of a district judge who was not disqualified did not authorize the selection of a special judge by agreement of the parties.

In the case of Oates v. State, the district judge was disqualified, and the special judge was appointed by the Governor. There was no agreement of the parties. At the time the Oates case was decided the statute which we have quoted did not contain the language in italics. The law previously existing, giving the Governor authority to appoint a district judge, had been repealed by Chapter 12 of the Acts of the Twenty-fifth Legislature, p. 39; and there being neither in the Constitution nor in the statute books any authority given the Governor to appoint a special judge, such an appointment was held void.

Stress is laid by the appellant upon the language used by the writers of the opinions in the cases mentioned by way of argument in support of the conclusion reached in the decision of the cases. Expressions of this character are valuable and persuasive, but the opinions rendered are conclusive alone of the questions involved, and in no case of which we are aware has the appointment of a special judge by consent of the parties been held invalid when the district judge was disqualified to try the case.

When a judge of the district court is disqualified to sit in a case by any of the causes mentioned in the Constitution, "the parties may, by consent appoint a proper person to try said case." Art. 5, Sec. 11, Constitution. The written agreement makes it manifest that the parties have by consent appointed Judge Hiner to try this case. True it is that the Governor appointed him, but this does not, in our judg-

ment, detract from the force of his selection by the consent of the parties. Unless the privilege of the parties to appoint a special judge by consent is abridged or qualified by the statute quoted, their action must hold. The statute directs, first, the judge to certify his disqualification to the Governor; second, the Governor to designate some judge to act; third, that it shall be the duty of such judge to act; and fourth, it provides that if by reason of sickness or other cause it is *impossible* to effect the exchange of districts the parties may select or agree on a special judge.

We discern no want of power in the Legislature to impose upon the Governor and the judges the duties named in these statutes. The Constitution expressly authorizes the requirement by law of the judges to exchange districts, and in terms permits the making of a law prescribing the method of appointment of a special judge where occasion arises and the litigants fail to agree upon one. The decisions discussed correctly affirm the existence of this power. Whether that part of the statute imposing different and more restrictive conditions upon the rights of the parties to select a special judge than those designated in the Constitution renders void such selection when made in accord with the conditions which the Constitution prescribes, is a different question. Appellant insists that such view harmonizes with the opinion written by Judge Ramsey in deciding the Oates case, supra. Doubtless there are expressions therein that support this contention. The major part of that opinion, however, is addressed to maintaining the proposition that, conceding the invalidity of the restriction upon the right of the parties to agree, there was sufficient vitality in other parts of the Act of 1897, supra, to repeal the prior law which authorized the Governor to appoint a special judge. The conclusion reached by the majority in the final decision of the Oates case was undoubtedly sound, because there was no effort of the parties to agree upon a special judge, and there was no law which authorized the Governor to appoint one. The concurrence of the presiding judge is limited to the result. Taking the opinion of Judge Ramsey as a whole, its interpretation by the appellant is in conflict with the language of Judge Ramsey expressed in the opinion limiting its scope, which language we quote:

"Again, it should be remembered that this is not a case in which a citizen is asserting the constitutional right to agree on a judge to try his case. If such a case were presented, and we had before us the appellant, asserting his right to be tried before a special judge on whom, with counsel for the State he had in a proper manner agreed, and who had accepted the trust, and qualified as by law provided, then, indeed, the question would be presented that he had been denied the constitutional right to be tried by a judge selected and agreed on under the terms of the Constitution."

The provision of the Constitution declaring that the parties may by consent appoint a special judge apparently requires no legislation

to render it effective. It appears self-executing, and has been so held in the case of Parker County v. Jackson, 5 Texas Civ. App., 36, 23 S. W. Rep., 825. Granting the authority of.the Legislature to pass laws facilitating the exercise of the right given (See Early v. State, 9 Texas Crim. App., 476), they cannot be inconsistent with the terms or restrictive of the right extended to the parties by the Constitution. Holly v. State, 14 Texas Crim. App., 505; Cooley's Constitutional Limitations, 94; Corpus Juris, Vol. 12, p. 750. The Constitution designates, as a condition upon which the parties may select a special judge by consent, the disqualification of the district judge. The statute adds the further condition that it must be *impossible* to secure a judge by exchange of districts. The new condition upon the exercise of the right is inconsistent with and restrictive of the conditions named in the Constitution. The selection of the special judge by consent was in accord with the Constitution, and must stand, though not in accord with the statute.

Relating to the proof of height of deceased, it was the theory of the appellant that the deceased had harassed and pursued him for years, and one of his witnesses testified that he had seen the deceased watching the appellant while he was in the place of business of the witness, which was elevated and had a platform connected with it, but the deceased stood on the ground. The height of this platform in comparison with the height of the deceased was with propriety inquired into on cross-examination.

The record reveals no harmful error in refusing to exclude the evidence that the deceased was about 61 years of age. The appellant refers to cases in which the impropriety of giving a charge upon the relative size and strength of the parties was affirmed, but none in which proof of the age of parties was rejected. In the leading case, Vann v. State, 45 Texas Crim. Rep., 434, from the standpoint of the appellant the deceased fired at him twice before any shot was fired by the appellant. It was held that a charge on the relative size and strength of the parties was inapplicable, a holding which must meet with unqualified approval. See also Ballard v. State, 71 Texas Crim. Rep., 587, 160 S. W. Rep., 716. In this case the appellant introduced testimony to establish the deceased's reputation as a violent and dangerous man, and testified that at the time he was a boy the deceased had killed a man. Both had been residents of the same small town for many years, the deceased occupying the position of a peace officer part of the time and at the time of his death. His age, habits, and disposition were well known to the appellant. According to the undisputed evidence appellant shot the deceased with a shotgun, striking him in the back when the distance between them was but a few feet, justifying the homicide upon the statement that the previous conduct of the deceased and that at the time created a reasonable apprehension of death at the hands of deceased. To determine the truth of this claim the jury were to view the matter from appellant's

standpoint. Appellant was aware of the age of deceased, and we are not prepared to say that it was not one of the facts which the jury was entitled to know in order to discharge the functions incumbent upon them. This view has been taken by the supreme court of Georgia. Hinch v. State, 25 Georgia, 699; Alexander v. State, 118 Georgia, 26; Wharton on Homicide, Sec. 278, p. 449. In Lundy's case, 59 Texas Crim. Rep., 134, the facts disclosed that the appellant shot the deceased and justified upon the ground of apparent danger. In the case it was proved that appellant was large, young, and robust; that the deceased was 65 years old, small, and blind in one eye. It was said that while such evidence would not be applicable in most cases of homicide, the case in hand disclosed no error in admitting it. Assuming that there are cases of homicide in which the age of the deceased would be irrelevant to the issues, it is doubtful whether it would be harmful. In the instant case it is not made to appear so. Moreover, the receipt of the evidence was justified by the issues made by the appellant touching the character of the deceased. See Wharton on Homicide, 428; Bearden v. State, 47 Texas Crim. Rep., 271; Washington v. State, 46 Texas Crim. Rep., 190.

Testifying as a witness, the appellant claimed to have had two conversations with the deceased on the day the homicide occurred. In the first conversation, according to this evidence, the deceased called the appellant a dirty devil, and said there was a bunch of crapshooters and drunkards that he was going to clean up on, and that the appellant would be about the first one; that in the second conversation the deceased had said that appellant must leave town or he would be locked up by the deceased. The appellant replied that he would not be locked up without a warrant, when the deceased said "By Ganny, I'll kill you." After this the appellant rented a shotgun and procured some shells. Subsequently, according to the testimony of the eye witness introduced by the State, the deceased was sitting on a bench in front of a cold-drink stand kept by a witness named Dalton. With the deceased sitting on the bench were the witnesses Pritchard and Yates. Appellant, on the sidewalk approaching the store, when within eight or ten feet of the parties raised his gun and said: "Get out of the way, Uncle Joe and Mr. Yates," referring to Pritchard and Yates. Deceased at the time was looking in the other direction, and when the remark was made got up and started away, when appellant fired, striking the deceased in the back, which was toward the appellant when the shot was fired. Appellant testified that when he first saw deceased he was with Pritchard and Yates; that he rose to his feet just as appellant saw him, and put his hand in his bosom, when appellant fired as quick as he could; that he had his gun in his right hand when he saw deceased, could not say that he put it to his shoulder, but fired to keep the deceased from killing him. The evidence showed that the deceased usually went armed with a pistol, which he sometimes carried in his bosom. No pistol was found upon him, though a witness

for the appellant testified that he saw the handle of a ·pistol at the time the shot was fired. Appellant introduced evidence to show that he had been informed that the deceased had said on the day preceding the homicide that he was going to run the appellant out of town. The Appellant also claimed that on one occasion at night while he and a companion were talking loud on a street, the deceased had jumped out of a doorway with a knife in his hand, and said if they were looking for trouble they could get it. He claimed also that the deceased had made a practice of following him ever since he was a boy, and introduced evidence that on one occasion, some ten days before the homicide, the deceased, in a town in Ellis County, had inquired of a witness whether he had seen some parties carrying a suitcase from towards the depot, and whether the appellant was with them; and had requested the witness to accompany him; that the sheriff, or man whom he took to be the sheriff, was along, and they each offered the witness a gun. Statements of the deceased indicating that he regarded the appellant as a violator of the law, and was seeking evidence upon which to base a complaint were introduced by the appellant. The State's counsel, over the appellant's objection, was permitted to ask him, while he was on the witness stand, various questions framed with the view of showing by circumstances and otherwise that the appellant had been guilty of various misdemeanors. In some instances the appellant denied the violations of the law inquired about; however, he testified that the deceased had in conversations with him accused him of bootlegging, he admitting that he got whiskey at various times, but said that it was for his personal use; that the deceased was not following him to prevent him from gambling; that he gambled in Fort Worth a little, but did not gamble in Mansfield where the homicide occurred.

The purpose and tendency of appellant's testimony was to impress the jury with the idea that the conduct of the deceased described by the appellant was indicative of malice against the appellant. The facts developed on the cross-examination tended to rebut this theory by showing that the appellant's own conduct invited surveillance of him by the deceased in his capacity as a peace officer, and to support the theory of the State that the appellant's action in killing deceased was inspired by malice. The questions which the appellant failed to answer in an affirmative way were not such as to bring them within the rule which condemns conduct on the part of the prosecution wherein it is sought to discredit the case of the accused and secure a verdict adverse to him by bringing before the jury damaging facts through irrelevant questions, or questions which obviously are not expected to elicit proof or lay a predicate for legitimate evidence. This rule is conducive to a fair administration of justice, and its violation has often been the subject of comment, and at times the cause for reversal. McIntosh v. State, 85 Texas Crim. Rep., 417; 213 S. W. Rep., 659; Faulkner v. State, 80 Texas Crim. Rep., 341; 189 S. W. Rep., 1077;

Hensley v. State, 81 Texas Crim. Rep., 221; 195 S. W. Rep., 197. The rule is not to be made use of, however, to abridge the right of legitimate cross-examination. In answer to some of the questions propounded to appellant the State succeeded in eliciting relevant evidence, and the other questions were of a similar nature and related to subjects introduced by appellant, and so far as disclosed or suggested by the record were not asked with the view other than to develop the facts.

Endeavoring by cross-examination of appellant to show that he had corruptly changed his testimony after he gave it upon a former trial, the State's counsel referred to an affidavit used by him in obtaining a new trial after his conviction. The court sustained an objection to this reference, and immediately withdrew it from the jury. Throughout the trial reference was frequently made by counsel for the State and the appellant to the fact that there had been other trials. Appellant testified that there had been four, and that one of these trials was before Judge Terrell. We find in the statement of facts that there was introduced in evidence by the appellant "The proceedings of the second trial, and the motion for new trial in Judge Terrell's court." It has often been held that neither the State's counsel nor members of the jury are authorized to disclose the former convictions. See MacDougal v. State, 81 Texas Crim. Rep., 179, and cases therein cited. It has not within our knowledge, however, been regarded as reversible error for this fact to be referred to when it was already known to the jury trying the case. The rule is to the contrary. Moore v. State, 52 Texas Crim. Rep., 336; Baines v. State, 43 Texas Crim. Rep., 490; Gaines v. State, 8 Texas Court Reporter, 616; Morrison v. State, 39 Texas Crim. Rep., 520; Kaufman v. State, 73 Texas Crim. Rep., 454; 165 S. W. Rep., 939; Edwards v. State, 80 Texas Crim. Rep., 485; Parker v. State, 39 Texas Crim. Rep., 264; Wade v. State, 43 Texas Crim. Rep., 207. In the case last mentioned it was known that the jury discussed the appellant's failure to testify. It appears that in developing his defense of insanity reference was made on the trial by one of the witnesses without objection to the fact that the appellant did not testify. This was held an adequate answer to the complaint. In the instant case the court having promptly withdrawn the matter from the jury's consideration, the only sound basis for the complaint would be that the jury was made to know by the question propounded that there had been a prior conviction. Since this necessarily followed from the introduction of the motion for a new trial. no error authorizing reversal is shown.

On his cross-examination the appellant was asked if on his second trial he had not ascribed his absence of recollection of the incidents of the first trial to the fact that his mental condition was then impaired by syphilis and drink. His reply was that he did not think he had syphilis, but had been drinking, and did not remember whether he had sworn that or not. Objection that this inquiry was irrelevant was made. The State's contention was that in testifying on the first trial

appellant omitted a very important fact, which was supplied in his testimony on his subsequent trials. The State's theory was that the new fact was a fabrication, and that appellant's claim that he did not remember what occurred in the first trial was a subterfuge. On the instant trial he said the first trial was like a dream; that he remembered but little about it, as he was badly torn up.

Testimony going to show that on his second trial appellant gave a different reason for his lack of memory from that at the present trial was relevant on the issues mentioned, and also bore on the state of his memory, which was also a proper subject of inquiry since he claimed that it was defective; especially was this true inasmuch as in the present trial the appellant gave in much detail his recollection of incidents occurring prior to the homicide. The question was not subject to the objection made, and considering the reply and the other features of the record, there is not disclosed an abuse of the right of cross-examination such as authorizes us to set aside the conviction. Wharton on Crim. Evidence, Secs. 475-476.

A witness for the appellant described the appearance of the deceased, and stated that he appeared to be in a hurry and walking fast on an occasion when it was claimed he was looking for the appellant. The bill, showing that on cross-examination by the State it was shown by the witness that the deceased at the time referred to was limping, discloses no error.

The State's counsel referred in his argument to the fact that the appellant killed an old man 61 years of age, with his leg shot off. The court promptly told the jury to disregard the statement "with his leg shot off" because it was improper and not founded on the evidence. We think the argument of counsel was improper, as was also his comment upon the fact that counsel for the appellant objected to his discussing the evidence of physical condition. From the statement by the trial judge that the remark of State's counsel followed an objection made by the counsel for the appellant, we infer, without the details, that the remark complained of was, in the opinion of the trial judge, retaliatory. See Craft v. State, 57 Texas Crim. Rep., 257. The frequency with which the court is called upon to consider the effect of improper argument by counsel for the state has often been the subject of comment and expressions of regret, and often requires reversal, but this is true in those cases only in which in the judgment of the appellate court, the remarks complained of, in connection with the surrounding circumstances, have probably resulted to the prejudice of the accused. See Borrer v. State, 83 Texas Crim. Rep., 198, 204 S. W. Rep., 1003, and cases therein referred to. The argument disclosed in the instant case in view of the evidence and the prompt withdrawal is not, in our opinion, such as require a reversal. The age of the deceased and the fact that he limped were facts legitimately before the jury, and available for proper discussion. There was no error in refusing to give instructions to the jury to the effect that

these matters were not to be considered. The evidence was not to be disregarded, and no request to limit it was made.

It appearing from the record that appellant had assailed the character and reputation of the deceased, both with evidence and argument, the remarks of the prosecuting attorney to the effect that no effort had been made to attack the reputation of appellant for the reason that it was not permitted by the law, while of a nature we do not approve, are such that under the facts of the case would not justify a reversal. See Wright v. State, 60 Texas Crim. Rep., 387; Lubbock v. State, 66 Texas Crim. Rep., 309, 147 S. W. Rep., 258.

In the charge on manslaughter we find the following:

"—and if you further believe from the evidence that at the time the defendant inflicted said wound he was laboring under such a degree of anger, rage, sudden resentment or terror as to render his mind incapable of cool reflection, produced by any or all of the acts of the deceased towards the defendant as detailed in evidence before you, or by words coupled with the acts of the deceased prior to and at the time of the killing, or from either the words spoken or acts done by the deceased, or from them taken in connection with all the other facts and circumstances detailed in evidence before you, and if you further believe from the evidence that such acts, words and conduct of the deceased alone, or taken in connection with all the other facts and circumstances detailed in evidence before you constituted adequate cause to produce and did produce in the mind of the defendant the conditions above referred to—"

In view of this charge there was no error in refusing to give the several charges requested by the appellant on the law of manslaughter. Several of the charges single out particular parts of the evidence, and others refer to the question of cooling time. The charge given was quite broad in instructing the jury to consider all of the acts and words of the deceased in determining whether adequate cause existed. The charge on cooling time, based upon the lapse of time between the conversation between appellant and deceased on the day of the homicide and the time the killing occurred, would have had the effect to limit the scope of the inquiry, and would have been to the disadvantage rather than in favor of the appellant. See Ham v. State, 98 S. W. Rep., 877.

The court having given a charge which was in no wise restrictive of appellant's perfect right of self-defense, and also a charge on the law of communicated threats, the special requests of the appellant to single out various matters in evidence, and instruct the jury upon their effect, were not called for. Moreover, they were inaccurate; for instance, in one of them the request is to instruct "that it makes no difference whatever, and you will not consider in evidence, whether the deceased was an officer or not;" another, "that is makes no difference whether the deceased was armed or not." There is nothing in the main charge referring to the fact that the deceased was an

officer, and of course the fact that he was one would not change the nature of the offense, but his status as one, under the evidence, was an element in the case, and could not with propriety be withdrawn. The fact that the deceased was unarmed was an admissible one to support the State's theory that he was not the aggressor. Seeley v. State, 43 Texas Crim. Rep., 69; Branch's Annotated Texas Penal Code, Sec. 1931. The fact being properly in evidence, the absence of error in the refusal of the court to withdraw it is obvious.

State's counsel addresses just criticisms at some of the bills of exceptions. Having in mind the serious nature of the case, we have searched the record to determine as best we could the relation of the subject of the bills of exceptions to the case and their probable effect of the matter to which they refer upon the result. In the light of the carefully prepared and able briefs of counsel for appellant and the State, we have made a careful examination of the record and the precedents cited, giving attention to some matters imperfectly preserved, and are constrained to decide that there has been brought for review no incident of the trial or ruling of the court which would authorize us to annul the verdict and judgment and order a reversal. If follows that the judgment is ordered affirmed.

*Affirmed.*