## WOODMEN OF THE WORLD v. ALEXANDER. (No. 2505.)

(Court of Civil Appeals of Texas. Texarkana. Feb. 9, 1922.)

1. Judges ⬅⬤➡40—Statute held to violate constitutional right to agree on person to try case when judge was disqualified.

Const. art. 5, § 11, expressly provides that when the judge of a district court is disqualified to hear and determine a case, the parties may by consent appoint a proper person to try it, and the Legislature was without authority to deny such right by Vernon's Ann. Civ. St. Supp. 1918, art. 1676.

2. Insurance ⬅⬤➡827—Where insurer admitted liability if insured did not die by his own hands, the jury's finding that he did not so die warranted judgment against insurer.

In an action on a beneficiary certificate, where the defendant society admitted that plaintiff was entitled to recover if the assured did not die by his own hands or act, the finding of the jury that he did not die that way warranted a judgment against the defendant, notwithstanding the jury also found that assured's death was not due to accident, and did not find its cause.

3. Insurance ⬅⬤➡819(4)—Evidence held not to sustain finding that insured did not die by his own hands.

In an action upon a life beneficiary certificate, evidence *held* not to sustain the jury's finding that the insured did not come to his death as the result of his own hands or act.

4. Appeal and error ⬅⬤➡837(11)—Evidence ⬅⬤➡527—Physician's opinion that insured could not have committed suicide not competent; incompetent testimony is without probative force.

In action on beneficial society certificate, defended on ground that deceased member committed suicide by hanging, where it appeared that he was found dead with his knees almost touching the floor, so that if he had straightened himself up he could have prevented death, the opinion testimony of a physician that he did not think a person in the position assured was found to be in "could force himself down and choke himself to death" was not competent as evidence to prove that assured's death was not due to suicide; and hence such opinion could not be regarded as testimony entitled to probative force in the case.

5. Insurance ⬅⬤➡817(3), 819(4)—Presumption against suicide will not alone sustain a finding that assured did not commit suicide.

In an action on a beneficiary certificate, the presumption against suicide merely places on the party asserting it the burden of proof, but

has of itself no probative force, and the finding of the jury that the assured did not commit suicide cannot be supported on the presumption the law indulges against it.

Appeal from District Court, Camp County; C. E. Bryson, Special Judge.

Suit by Cora Alexander against the Woodmen of the World. Judgment for plaintiff, and defendant appeals. Reversed and remanded for new trial.

The suit was by appellee, the beneficiary named in a certificate or policy issued by appellant (a fraternal benefit society) to her husband, M. D. Alexander, September 20, 1919. By the terms of the contract evidenced by the certificate appellant was to pay appellee $500 if the insured died during the first year of his membership, $750 if he died during the second year, and $1,000 if he died after the second year; and in addition thereto, without respect to the time when the insured died, was to pay $100 for the erection of a monument to his memory. The insured died May 19, 1921, which was during the second year of his membership. It was stipulated in the certificate that it should "be null and void and of no effect" if the insured should die "by his own hand or act, whether sane or insane"; and in his application for the insurance the insured agreed that in the event of his death by his own hand or act, whether he at the time was sane or insane, the certificate he applied for should be "null and void and of no effect." In its answer to the suit appellant alleged that the insured died from his own hand or act, and set up the provisions in the application and certificate referred to as a defense against the recovery sought by appellee against it. At the trial appellant invoked rule 31 for district courts (142 S. W. xx); and, after admitting that appellee had "a good cause of action, [quoting] as set forth in her petition, to the extent of $750 and a monument, except so far as it may be defeated in whole or in part by the facts of its answer constituting a good defense, which may be established on the trial," asked and was granted permission to open and close the argument in the case. Appellee, it seems, relied on the admission by appellant referred to, and did not offer any evidence in support of the allegations in her petition. Testimony admitted at appellant's instance to establish its contention that the assured was a suicide was substantially as follows:

Walter Carpenter testified that on the morning of May 19, 1921, he heard appellee scream, and ran down to her home. When he got there appellee told him that her husband was "at the barn dead." The witness went to the barn, and saw the insured there hanging by a rope about 12 feet long, which was wrapped, but not tied, around a joist

about 7 feet from the floor. The insured's head "was about 3 feet below the joist," and his arms "were hanging down by his side." "His feet," the witness said, "were not clear of the floor. His toes were turned back behind him, and his knees were almost to the floor. He could have straightened up and prevented death, and would have had to force himself down to make the rope choke him." There was a knot in the rope "somewhere about the joist." "That knot," the witness said, "would have been the only thing to keep the rope from slipping off the joist. I really believe that knot was in a position to keep the rope from slipping, or it was right close to it." The witness cut the rope near the assured's neck, and left the rope, without otherwise disturbing it, hanging to the joist.

Ray Johnson testified that he saw the insured within a few minutes after "they cut him down," and examined the rope "where it was around the joist." "It was just looped around the 2 by 4 joists," he said. "There was a knot in the rope, but it was not where it was wrapped around the joist. The rope was wrapped around the joist one time. I can't say about it just being laid up there. It is a mystery to everybody how that rope held him the way it was attached to the joist."

M. M. Smith testified that he held an inquest, and went to the barn, where he saw the rope. "It was wrapped around that joist two or three, at least, times, at least three times around that joist," he said. "There was a knot in the rope in the part that was wrapped around the joist, and the part of the rope his head was attached to came across the rest of the rope below the knot that was in the rope."

Dr. Henderson, the county physician, testified that he attended the inquest, and saw the rope. "I think," he said, "the rope was probably wrapped around the joist two or three times." The witness said he did not examine the assured's body, but that "there was some visible signs of marks around his neck." His conclusion from what the witnesses said and what he saw was that the assured died from strangulation, "as his neck was not broken. He just choked to death." On cross-examination the witness said:

"I don't think that a man in a position that he could raise himself up and keep from choking to death, I don't think that he could force himself down and choke himself to death. I think there would be an involuntary effort in a man to protect himself, even if he wanted to choke to death, if he was in the position described by you."

And on re-examination by appellant said:

"I don't think that a man would be able to just drop himself down and choke to death without any effort to protect himself. If he had been up on a box or something above the floor and jumped off, it might have caused him such a shock that he would not have made any effort to protect himself. If he had fallen any distance it might have shocked him to such an extent that he could not have made any effort to protect himself."

It appeared from the testimony of several witnesses that there were two boxes in the barn—a large one 5 or 6 feet from the place where the assured was found, and a small one, about 12 inches high, about 2 feet from said place. The assured's hat was found on the larger box.

The witness Carpenter said the assured a short time before he died talked to him, with tears in his eyes, "about being in hard circumstances, and his crops not doing any good," and "like he owed some money and could not pay it." That kind of talk, however, the witness added, was not unusual. "Everybody," he said, "claimed to owe debts they could not pay. That was the conversation of everybody and every crowd of farmers that got together." The witness Johnson testified that the assured also talked to him about crop conditions. "He said he was troubled about his crop conditions."

B. L. Alexander, the assured's brother, testified that his mother had been in an insane asylum, and was at home on a furlough at the time the assured died. The assured's mind, he said, "was in good condition." "I don't know," he said, "whether he was troubled over his crops or financial condition or not. My brother was not involved in debts as much as the average farmer. I think that $150 would have covered his debts."

The jury having answered, "No," to the only question submitted to them, to wit, "Did M. D. Alexander come to his death as a result of his own hand or act and not by accident?" the court rendered judgment in appellee's favor for $750, "and the further sum of $100 for the erection of a monument to the memory of the assured." Whereupon appellant prosecuted this appeal.

E. A. King and M. M. Smith, both of Pittsburg, for appellant.

J. D. Bass and J. D. Lawrence, both of Pittsburg, and T. C. Hutchings, of Mt. Pleasant, for appellee.

WILLSON, C. J. (after stating the facts as above). [1] The district judge having declined to try the case, on the ground that he was a member of the appellant society and therefore disqualified from trying it, the parties agreed to try it before C. E. Bryson, an attorney practicing at the Camp county bar. Notwithstanding the agreement, appellant insists Judge Bryson was without power to try the case, and therefore that the judgment against it is invalid. The contention is based on a provision in article 1676, Vernon's Statutes, as amended by the act of March 12, 1915 (Vernon's Ann. Civ. St. Supp. 1918,

art. 1676) whch seems to have been intended to deny to the parties to a cause a right to agree upon an attorney to try it unless the disqualification of the presiding judge had been certified to the Governor and it was found to be impossible for the presiding judge and a judge designated by the Governor to exchange districts so the designated judge could try the case. The contention is overruled. It is expressly provided in section 11 of article 5 of the Constitution that when a judge of the district court is disqualified to hear and determine a case "the parties may, by consent, appoint a proper person to try said case." The right being so conferred on the parties, the Legislature was without power to restrict it in the manner provided in the statute. Patterson v. State, 87 Tex. Cr. R. 95, 221 S. W. 596; Parker County v. Jackson, 5 Tex. Civ. App. 36, 23 S. W. 924; Oates v. State, 56 Tex. Cr. R. 571, 121 S. W. 370; Cohn v. Saenz (Tex. Civ. App.) 194 S. W. 685.

[2] The contention that the answer of the jury to the question submitted to them was too "indefinite and uncertain" to be made the basis of a judgment against appellant also should be overruled, we think. The answer, as we construe it, was that·the assured did not die by his own hands or act nor by accident. Appellant having admitted that appellee was entitled to recover against it if the assured did not die by his own hands or act, the finding of the jury that he did not die that way warranted a judgment against appellant, notwithstanding the jury also found that the assured's death was not due to accident, and did not find what it was due to.

[3, 4] But we think the finding of the jury that the insured did not "come to his death as the result of his own hands or act" was contrary to the evidence, and that the trial court should have set same aside and granted appellant a new trial. The testimony so far as it was material to the question is set out in the statement above. It will be noted that all of it, so far as it is as to matters of fact, points to suicide as the cause of the assured's death, and is not consistent with any other theory. Appellee has not pointed out, and we have not found anything in the testimony, which remotely suggests that the assured's death was due to accident ,or to the intentional act of any other person than himself. It is true a physician testified that he did not think a person in the position the assured was found to be in "could force himself down and choke himself to death." But the physician's opinion was not competent as evidence to prove that the insured's death was not due to suicide. Ins. Co. v. Wagner, 50 Tex. Civ. App. 233, 109 S. W. 1120, 1123, and authorities there cited. As it was not, his opinion cannot be regarded as testimony entitled to probative force in the case. Henry v. Phillips, 105 Tex. 459, 151 S. W. 533. Nor can the finding of the jury that the assured did not commit suicide be supported on the presumption the law indulges against suicide. (Woodmen v. McCulloch [Tex. Civ. App.] 192 S. W. 1154), for "presumptions are not indulged against testimony." Moore v. Supreme Assembly, 42 Tex. Civ. App. 366, 372, 93 S. W. 1077, 1079; Sharpleigh v. Cooper, 1 White & W. Civ. Cas. Ct. App. § 55; Lincoln v. French, 105 U. S. 614, 26 L. Ed. 1189; Modern Woodmen of America v. Kincheloe (Ind. App.) 93 N. E. 452. In the case last cited the court said:

"There is a presumption of law against suicide; * * * but such presumption is not evidence and cannot be treated as evidence by the jury in reaching a verdict."

[5] The effect of the presumption is, it seems, merely to place on the party asserting that death was due to suicide the burden of proving it. If he fails to prove it the presumption is to be given effect, but it has no probative force as against testimony sufficient to prove death by suicide. The testimony admitted at the trial showing, as it did, that the death of the assured was ·due to his own act, and there being no testimony in the record on which to base a conclusion to the contrary, the finding of the jury was unauthorized, and this court cannot do otherwise then reverse the judgment based on it. Grand Fraternity v. Melton, 102 Tex. 399, 117 S. W. 788; Ins. Co. v. Long (Tex. Civ. App.) 178 S. W. 778. Therefore it will be reversed, and the cause will be remanded to the court below for a new trial.